**Marion V. THOMAS and Edith G. Thomas, Plaintiffs-Appellants,**

v.

**ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellee.**

**No. 77–1619.**

United States Court of Appeals, Fifth Circuit.

April 16, 1979.

Rehearing Denied May 23, 1979.

David W. Robinson, Trial Atty., Baton Rouge, La., for Marion V. Thomas.

Cyrus J. Greco, Baton Rouge, La., for Edith G. Thomas.

Boris F. Navratil, Baton Rouge, La., for defendant-appellee.

Before GEWIN, HILL and FAY, Circuit Judges.

GEWIN, Circuit Judge:

Appellants, Marion and Edith Thomas, invoked diversity jurisdiction and brought separate claims of negligence against appellee Illinois Central. The claims were consolidated, the parties went to trial and at the close of the evidence, the district judge granted a directed verdict in favor of the railroad company. On this appeal appel-

lants contend they adduced sufficient evidence under *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969) to create a question for the jury. We reverse and remand.

Marion and Edith Thomas are residents of Baton Rouge, Louisiana. Both are deaf mutes. On February 28, 1975 they were traveling south on Monterrey Boulevard in Baton Rouge in a Pontiac owned and driven by Mr. Thomas. Mrs. Thomas was a guest passenger. Monterrey Boulevard runs north and south and intersects South Choctaw Drive which runs east-west. There are a series of overhead lights regulating traffic at the intersection. Approximately 75 feet north of the intersection is a railroad crossing. At this point a railroad track owned by appellee Illinois Central crosses Monterrey, running parallel to South Choctaw. Monterrey Boulevard is a heavily used thoroughfare and has four lanes, two for south bound traffic and two for north bound traffic, in the area of the crossing.

Appellants reached the crossing at about 5:30 p. m., during the peak of rush-hour traffic. Vehicles were moving slowly at a bumper-to-bumper pace. The traffic lights at the South Choctaw-Monterrey intersection changed to red, backing up traffic and appellant Thomas stopped his automobile immediately behind a Cadillac which had stopped on the tracks. There were 3 or 4 vehicles situated between the Cadillac and the red light. The crossing was not protected by barricades, but did have electric bells and flashing lights to warn of trains. When Thomas stopped his automobile behind the Cadillac he was roughly abreast the signals and unable to see them from this position.

After the Cadillac had stopped on the track, its driver, Manuel, heard bells ringing. He immediately looked and observed a train approaching from the east. Manuel testified at trial that the train initially appeared to be a good distance away and he was not too concerned about it. He looked at the light, looked back at the train and noticed that the train was much closer and appeared to be traveling at a fairly high rate of speed. Manuel then began to blow his horn and push the automobiles in front of him in an effort to move his vehicle off the track. After several seconds, he succeeded.

Appellants were unable to hear the bells because of their deafness and unable to see the signals, which were flashing, because of their position. Immediately after Manuel advanced his vehicle off the track, Thomas, without looking in either direction down the track pulled his automobile onto the track. A disputed number of seconds later the train struck the automobile injuring appellants. The locomotive traveled 260 feet past the point of impact before coming to a halt.

Mr. and Mrs. Thomas contended in their complaint that the locomotive engineer was negligent in traveling at a high rate of speed and that this negligence was the proximate cause of the accident. Appellants also claimed that if Thomas was negligent in moving his car onto the track, the engineer, with the exercise of due care, could have stopped the train before reaching them and thus was liable under the doctrine of Last Clear Chance, a viable part of Louisiana torts law. In granting the directed verdict, the trial judge disagreed. The court stated that appellants had failed to prove by any evidence that the engineer was negligent and that this negligence caused the accident. The court reasoned further that the railroad company was not liable under the Last Clear Chance rule because the evidence established that the train was only 150 feet from the crossing when Thomas advanced his vehicle onto the track and there was no possible way for the engineer to stop the train within this distance. Appellant's negligence was an intervening cause and the sole proximate cause of the accident.

*Boeing Co. v. Shipman* provides the rule by which we must determine the propriety of the directed verdict. In that decision, this court held that in diversity cases a trial judge is to apply a federal standard to decide whether the evidence is sufficient to

present a jury question.[1] 411 F.2d at 368. That test was articulated as follows:

> On motions for directed verdict . . . the Court should consider all of the evidence—not just that evidence which supports the non—mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied and the case submitted to the jury.

411 F.2d at 374.

We find from a review of the record that there was ample evidence from which a jury reasonably could have found appellee liable. The court thereby committed error in granting the directed verdict.

The trial judge found that there was no evidence of negligence on the part of the engineer. Yet, the testimony of several witnesses established that shortly before it reached the crossing, the train was traveling in excess of the 20 mile per hour speed limit set for trains by a Baton Rouge ordinance.[2] The engineer admitted that he was traveling 30 miles per hour when the crossing first came into view approximately one-half mile away. Vance Thomas (no relation to appellants), an eyewitness to the accident, testified that the train was traveling 35–45 miles per hour when he first observed it at about one-half mile from the crossing. Moreover, it appeared from the evidence that the engineer may have violated appellee's own rules on speed. Those regulations state that within the Baton Rouge yard

limits an engineer is obliged to operate the train at a speed "prepared to stop within one-half the range of vision." The rules also require engineers to travel at a speed "prepared to stop short of train or obstruction." Appellant's proof showed that the engineer knew that Monterrey was a busy thoroughfare and that during rush hour traffic often became backed up onto the track.

The district court also concluded that the train was only 150 feet from the crossing when appellants came onto the track and hence regardless of its rate of speed, the engineer could not have stopped the train. There existed, however, substantial evidence to the contrary. Witness Vance Thomas estimated that appellant's vehicle was on the track for 30–40 seconds before it was struck. He also testified that the train did not seem to slow down until immediately before it struck the vehicle. Manuel, the driver of the Cadillac, testified that as soon as he edged off the track, he looked back at the train and saw that it was still several hundred yards away. He immediately peered into his rearview mirror and observed appellant Thomas move his Pontiac onto the track. Manuel estimated the distance of the train from the crossing when Thomas came onto the track to be about one-eighth of a mile. In addition, the engineer testified that when the crossing first came into view, with Manuel's car on the track, he applied the brakes in a service application to slow the train down, presuming the automobile would move off the track. He admitted that he had no intention to stop at this time.

We are convinced that the above testimony created a substantial conflict in important evidence bearing on the issues of appellee's negligence and its possible liability under the Last Clear Chance rule.[3] This is not to imply that the bulk of the proof favored appellants. Appellee also adduced

1. *Boeing* answers appellee's assertion that a state test is to be applied in diversity cases.

2. Baton Rouge, La.Rev. Ordinances title 10, § 1 (1969).

3. We express no view on whether the doctrine espoused in *Baumgartner v. State Farm Mutual*

*Ins. Co.*, 356 So.2d 400 (La.1978) governs the facts of the instant case. This question involves an interpretation of state law. It was not well briefed and is better left for further proceedings wherein it can be debated more extensively by the parties.

substantial evidence on its behalf which we see no need to elucidate here.[4] If the cause had been submitted to the jury, it is entirely possible that the jury would have reached the same conclusion as the district court. But as we held in *Boeing Company*, it is the exclusive province of the jury as the fact-finding entity and not the court "to weigh conflicting evidence and inferences, and determine the credibility of witnesses." 411 F.2d at 375.

Fidelity to precedent requires us to afford appellants the opportunity to have a jury decide their controversy. We therefore reverse and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.

---

4. This proof included the fact that the warning bell heard by Manuel is not activated until an approaching train is 1200 feet from the crossing. Also the engineer testified that the train was only 150 feet from the crossing when appellants came onto the track.