No. 21,350.

HARRIET M. BERRY, as Administratrix, etc., *Appellee,* v. CHAUNCEY DEWEY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. JURISDICTION—*Calling in Judge of Another District. Berry v. Dewey,* 102 Kan. 392, is followed on the question of the jurisdiction of the trial judge.

2. CONTINUANCE—*Insufficient Grounds.* The defendants applied for a continuance on the ground that one of their attorneys was a member of the legislature and could not be present at the trial because the legislature was in session. The application was properly denied.

3. CONTINUANCE—*Insufficient Showing.* It is not error to deny an application for a continuance made on the ground that the person making the application is a party to the action and desires to attend the trial as a witness and is prevented from so doing by the sickness of a member of his family, where that sickness is shown by the unverified certificate of attending physicians, and no one having knowledge of the sickness swears to either the certificate or the application.

4. WRONGFUL DEATH—*Damages—Competent Evidence.* In an action to recover damages for wrongful death, it is proper to prove the

38—Kan.—1778

amount of property owned by, and the wage-earning capacity of, the deceased person.

5. SAME—*Trial—Competent Evidence Withdrawn—No error.* A judgment will not be reversed on account of the withdrawal of evidence tending to impeach persons who are neither parties to the action nor witnesses therein, where the evidence withdrawn is on matters wholly collateral and cannot assist the jury in determining the issues on trial.

6. CONSPIRACY—*Evidence.* There was evidence sufficient to show a conspiracy on the part of the defendants.

7. SAME—*Instructions.* The instructions concerning conspiracy were fair, and they fully protected the rights of the defendant.

8. SAME. Of the instructions requested by the defendant, those that were proper were, in substance, given by the court, and those that were refused were properly refused.

9. WRONGFUL DEATH—*Damages—Verdict Not Excessive.* In an action brought by a mother to recover damages for the wrongful death of her son, a verdict and judgment for $5,000 is not excessive, where the deceased was 33 years old at the time of his death, was in good health and vigorous, was accumulating property, and was able to earn about $1,000 a year.

10. SAME—*Certain Deductions from Damages Properly Denied.* Financial benefits derived by the heir of a person who has lost his life by the wrongful act of another cannot be deducted from the damages sustained and the verdict and judgment be reduced by the benefits received.

Appeal from Sherman district court; JACOB C. RUPPENTHAL, judge *pro tem.* Opinion filed March 9, 1918. Affirmed.

*William R. Smith,* of Topeka, *James H. Harkless,* and *Clifford Histed,* both of Kansas City, Mo., for the appellants.

*A. M. Harvey,* of Topeka, and *L. W. Colby,* of Beatrice, Neb., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In June, 1903, the defendants, with other persons, ten in all, armed, left the ranch of defendant Chauncey Dewey and went to the home of Alpheus Berry, about five miles distant, to get a water tank that had been purchased by Chauncey Dewey at an execution sale on the day previous. While Dewey and his party were at the home of Alpheus Berry, a battle occurred between Dewey and his party on the one side and Daniel Berry, Alpheus Berry, Burch Berry, Beach

Berry, and Roy Berry on the other side. When the battle ended, Daniel Berry, Alpheus Berry, and Burch Berry had been killed by members of the Dewey party, and Roy Berry had been wounded by them. Beach Berry escaped. None of the Dewey party was injured.

Daniel Berry was the father of Burch Berry and Alpheus Berry. Harriet M. Berry was the wife of Daniel Berry and the mother of Burch Berry and Alpheus Berry. In 1905 Harriet M. Berry was appointed administratrix of the estate of Burch Berry. She then commenced this action, which, in March, 1917, resulted in a judgment in favor of the plaintiff for $5,000, from which judgment the defendants appeal.

1. The defendants question the jurisdiction of Hon. J. C. Ruppenthal to try the action. They present the same questions that were presented in *Berry v. Dewey et al.,* 102 Kan. 392. The conclusion there reached is now followed.

2. The defendants applied for a continuance on the ground that B. F. Endres, one of their attorneys, was a member of the legislature and could not be present at the trial because the legislature was in session. The continuance was refused. The defendants contend that the refusal was error. The trial court gave as a reason for refusing to grant a continuance on this ground that Mr. Endres did not appear to be of counsel for the defendants in kindred actions that had been on trial in the previous November and December, and that the court had every reason to believe that the employment of Endres in the present action was subsequent to his election to the legislature. The court concluded that to grant a continuance on an application of this kind would be ignoring the provisions of sections 6050-6052 of the General Statutes of 1915, which authorize the court to prevent any abuse of the privileges granted by these sections of the statutes. This action had been pending in the district court twelve years; it was time to dispose of it. A continuance might have been granted, but there was no reversible error in refusing to grant it.

3. The defendants complain of the refusal of the court to grant a continuance on account of the absence of defendant Chauncey Dewey, who desired to be present and to testify as a witness. At the time of the trial Mr. Dewey was in New Orleans, La. On March 1, 1917, he telegraphed from New Orleans

that his only child was dangerously sick, and that he could not leave the child, and asked that the cause be continued. That telegram was sent to Clifford Histed, one of Dewey's attorneys. The certificate of three doctors in New Orleans was attached to, and made a part of, the application for a continuance. That certificate was dated March 1, 1917, and read:

"To whom it may concern: This certifies that, owing to the critical condition of their child, Molly Dewey, Mr. Chauncey Dewey and wife will be unable to leave the city at present or in the near future."

The certificate was signed by three physicians and acknowledged—not sworn to—before a notary public. The application was sworn to by James H. Harkless, one of the attorneys for the defendants. It disclosed the importance of Dewey's attendance, both as a witness and as a party. The basis of the application was the sickness of Dewey's child. In *Harlow v. Warren*, 38 Kan. 480, 17 Pac. 159, this court said:

"Where an application is made for the continuance of the trial of a case to another term, upon the ground that the party applying therefor is prevented from attending the court on account of his sickness; and the application is supported, as to the sickness of the party, only by the certificate of a physician; and no affidavit is filed by the physician, or any other person having personal knowledge that the party in unable to attend court: *Held*, That the ruling of the district court in refusing a continuance of the case will not be reversed." (Syl.)

(See, also, *Beard v. Mackey*, 51 Kan. 131, 32 Pac. 931; 9 Cyc. 97.)

The present case and *Harlow v. Warren*, supra, are very closely parallel, and under the authority of that case the trial court did not abuse its discretion in refusing a continuance, and no reversible error was thereby committed.

4. The defendants contend that the court erred in admitting evidence concerning the property owned by, and the wage-earning capacity of, Burchard B. Berry. In an action to recover damages for wrongful death, it is proper to prove the amount of property owned by, and the wage-earning capacity of, the deceased person. (*K. P. Rly. Co. v. Cutter*, 19 Kan. 83; *Gas Co. v. Carter*, 65 Kan. 565, 70 Pac. 635.)

5. On the trial, the plaintiff, in order to show the good character of the Berrys, was permitted to prove that none of the Berrys had been engaged in stealing cattle prior to the shooting. The defendant then offered to introduce in evidence an

indictment of Alpheus Berry and Daniel Berry, charging them with grand larceny and with having received stolen property in Boulder county, Colorado, in October, 1891. The indictment, with other documents concerning the same matter, was admitted in evidence, and afterward withdrawn. The defendants urge that it was error to withdraw that evidence from the consideration of the jury. The evidence may have been competent, but it was not material. It did not matter whether Alpheus Berry and Daniel Berry had previously been engaged in stealing cattle, or whether they had been indicted for larceny. Evidence on either of these questions could not assist the jury in determining the issues that were properly on trial in the present action. Neither Alpheus Berry nor Daniel Berry were witnesses; both had been killed by the Dewey party.

6. The defendants strenuously argue that there was not sufficient evidence to establish a conspiracy on their part. Although it is practically impossible to detail all the evidence which tended to prove that there was a conspiracy, yet some of the evidence which tended to show that fact was as follows:

For some time there had been ill feeling between Dewey and his employees on the one side and the Berrys on the other side. Threats had been made, and each of the contending parties went armed as against the other. On the day before the tragedy occurred, defendant Dewey, at a sheriff's sale under an execution, purchased a water tank that was then on the property of Alpheus Berry. On the day of the tragedy, ten men gathered at the ranch headquarters of defendant Dewey. The ten, all armed, then went to the home of Alpheus Berry to get the water tank, but, when they reached that home, no request or notice of any kind was given that the defendants desired to take the tank. They arranged themselves in such a way as to protect themselves in case shooting should occur. When the Berrys approached, the Dewey party began shooting, and when the shooting ceased three of the Berrys were dead and one was wounded; one had escaped. The tank was then forgotten, and the Deweys returned to their ranch. This evidence was sufficient to warrant the trial court in submitting to the jury the question of a conspiracy, and was sufficient to justify the jury in finding that there was a conspiracy.

7. Complaint is made of the instructions given by the court. The basis of this complaint is the question of conspiracy. The instructions have been examined; they appear to have been fair and to have fully protected all the rights of the defendant. No substantial error in them has been indicated by the defendants.

8. Complaint is made of the refusal of the court to give certain instructions asked by the defendant. Those of the instructions requested that were proper were, in substance, given by the court, and those that were not proper were refused. There was no error in refusing to give any of the instructions requested by the defendant.

9. Another matter urged is that the verdict was excessive. The verdict and judgment were for $5,000. At the time Burch Berry lost his life he was 33 years of age, in good health, vigorous, and was accumulating property, and was able to earn about $1,000 a year. Burch Berry left neither wife nor children. The verdict for $5,000 was not an excessive verdict as compensation for the loss of support that would have been furnished to Harriet M. Berry by her son, had he lived after her husband and her other son were killed.

10. The last matter urged is that Harriet M. Berry, who was the sole heir of Burch Berry, received a substantial financial benefit as the result of the death of her son, and it is urged that the benefit should have been deducted from the amount of the verdict, and, if the benefit was greater than the damage sustained, no verdict should have been rendered for the plaintiff. The proposition is untenable. Although it appears to have standing in the courts of some of the states, it does not address itself to the judgment of this court as being sound, legal, equitable, or fair, and it cannot be permitted to reduce the amount of recovery in any way.

On the whole, substantial justice seems to have been done in this case, and the judgment is affirmed.