No. 53,346

MICHELLE PAPE, a minor, by Kathleen Pape Johansen, Guardian and Conservator, and KATHLEEN PAPE JOHANSEN, individually and as Executrix of the Estate of Terry Dwayne Pape, Deceased, *Appellees,* v. THE KANSAS POWER AND LIGHT COMPANY, *Appellant,* and MICHAEL PAPE, a minor, by PAMELA PAPE, Conservator, *Intervenor-Appellee.*

(647 P.2d 320)

Opinion filed June 11, 1982.

*Robert D. Ochs,* of Fisher, Ochs and Heck, P.A., of Topeka, argued the cause, and *Frederick K. Starrett* and *Gregory A. Whittmore,* of the same firm, were on the brief for the appellant.

*Donald W. Vasos,* of Vasos, Kugler & Dickerson, of Kansas City, argued the cause and was on the brief for the appellees.

*Dan Dykstra,* of Dykstra & Grill, of Kansas City, Missouri, and *Robert W. Harris,* of Harris & Harris, of Kansas City, were on the brief for the intervenor-appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the widow and children of Terry Pape against the defendant, Kansas Power and Light Company (KP&L), to recover damages for his wrongful death. Pape suffered fatal injuries on February 10, 1978, when a metal pole which he was using came in contact with KP&L's uninsulated 7200 volt power line at the Fairview Elevator, Fairview,

Kansas. Pape's employer, Brockhoff Feed Yards, Inc., paid work-men's compensation to the plaintiffs. Terry Pape died on February 20, 1978. Kathleen Pape, as executrix of the estate of Terry Pape, brought a survivorship action for the damages which occurred prior to Pape's death. It was consolidated with the wrongful death action in plaintiffs' petition.

Most of the essential facts in the case were undisputed and are as follows: In October of 1957, KP&L installed a pole, transformer and three strands of uninsulated wire carrying 7200 volts of electricity on the premises of the Fairview Elevator. In 1972, the owner of Fairview Elevator installed six 8-ton Butler bulk feed bins, and a metal access ladder was bolted to the side of a bin and welded at the top. On February 10, 1978, Terry Pape, an employee of Fairview Elevator, was standing on the catwalk cleaning out one of the bins with a 20-foot metal pole. The pole somehow came in contact with the 7200 volt uninsulated wire. Pape fell to the ground approximately 20 feet below the bins, causing fatal head and neck injuries.

After the case was filed, Brockhoff Feed Yards, Inc., Pape's employer, was brought in as a party by KP&L to establish its percentage of causal negligence along with that of Pape and KP&L. The jury returned the following special verdicts:

"FAULT
| | |
|---|---|
| Terry Pape, deceased | 36-⅔% |
| Kansas Power & Light | 35-⅔% |
| Brockhoff Feed Yards, Inc. | 27-⅔% |

"DAMAGES
| | |
|---|---|
| Survivorship: | |
| Pain and Suffering | $2,000.00 |
| Loss of Time | 450.00 |
| Medical & Hospital | 8,700.00 |
| | $11,150.00 |
| Wrongful Death: | |
| Pecuniary Loss | $320,000.00 |
| Nonpecuniary Loss | 30,000.00 |
| Funeral Expenses | 3,704.75 |
| | $353,704.75" |

The court entered judgment in the survivorship against KP&L and for Kathleen Pape, executrix, in the amount of $4,037.39. The court entered judgment in favor of the widow and children for damages in the wrongful death action in the amount of $126,152.33. Defendant's post-trial motions were overruled, and defendant appealed to this court.

It would serve no useful purpose to set forth in detail all of the evidence presented by the parties in the case. Suffice it to say, the case was well tried by able counsel and the issues of both liability and damages were hotly contested. On the issue of liability, the plaintiffs' evidence disclosed that the manager of Fairview Elevator talked to defendant's foreman on three or four occasions *before* Pape's fatal injury and requested that the line be raised or rerouted and the pole cleaned up. According to this witness, KP&L's foreman also thought something should be done, but nothing was done. A number of employees of KP&L testified that it is foreseeable and known in the industry that persons using metal poles make contact with 7200 volt power lines. KP&L's division manager and division supervisor in Hiawatha testified that they were aware of the proximity of the grain bins to the electrical line before Pape was injured. They knew that the wires carried 7200 volts of electricity and had a potential of causing severe injury or death. They admitted it was feasible to raise or relocate the line. No warning sign was placed on the wire, bins, or pole either before or after Pape's injuries.

There was evidence from KP&L's general foreman that, on the date of Pape's injury, the electrical line did not meet the vertical clearance from the bins required by the National Electrical Safety Code. KP&L's construction manual required a vertical clearance of 15 feet between 7200 volt lines and balconies, roofs, and areas accessible to pedestrians. The evidence in the case was that the line was in fact from 8 to 10 feet from the top of the grain bins. Other KP&L employees, who came upon the premises periodically to read the meter, observed the bins and knew the catwalk had been installed thereon. Other testimony showed that KP&L supervisors knew of numerous incidents involving lengths of metal pipes contacting KP&L's uninsulated power lines which resulted in serious injury or death. Plaintiffs presented the testimony of experts in the electrical distribution field who inspected the premises in question after the fatal accident. They testified that the close proximity of the power line to the catwalk presented an extremely hazardous situation and that KP&L had failed to comply with the safety standards prescribed by the National Electrical Safety Code. Based upon this testimony, the jury brought in the verdicts favorable to the plaintiffs as set forth above.

The defendant's first point is that the trial court erred in giving an instruction on the presumption of due care exercised by a deceased person. This is the so-called "love of life" instruction. This instruction, in substance, advised the jury that it is presumed that Terry Pape at the time of contact with KP&L's line was exercising due care to avoid injury but that the presumption was rebuttable. Defendant complains that the instruction was improper, because the instruction was given in spite of the fact that the trial court had previously found Pape guilty of contributory negligence as a matter of law. We find no merit to this contention. We note from the record that, despite defendant's repeated requests, the court refused to hold as a matter of law that Terry Pape was negligent, although the court opined outside the jury's presence that the jury most likely would find him guilty of some negligence. The submission of the instruction in this case was proper, since there were no eyewitnesses to the incident and plaintiffs' case was necessarily based on circumstantial evidence. The rule in Kansas is that, in a wrongful death action where there are no known eyewitnesses and plaintiff's action is based on circumstantial evidence, a trial court may in its discretion submit an instruction on the presumption of due care of a decedent. See *Akin v. Estate of Hill,* 201 Kan. 306, 309, 440 P.2d 585 (1968); PIK Civ. 2d 2.70 (1977). Furthermore, in the special verdict in this case, the jury found Terry Pape to be 36⅔% negligent. The jury could not have been misled by the instruction, since the jury chose to follow the language in the court's instruction that the presumption of due care is overcome if the jury is persuaded by the evidence that the contrary is true. We find no error in the giving of the "love of life" instruction.

The defendant raises several points concerning the admission of evidence. Defendant complains that the trial court erred in admitting, over objection, defendant's official accident investigation report which identified the date, hour, and circumstances at the time of Pape's injury and declared the power line's clearance above the catwalk to be 8 feet. At the time of the trial, the defendant contended that the clearance was 10 feet. The report was admissible under K.S.A. 60-460(g) as an admission and also to test the credibility of defendant's witnesses.

Defendant contends that the trial court erred in admitting

evidence of previous KP&L accidents involving contact between metal poles and its electrical lines. This evidence was admissible on the issue of the foreseeability of the accident, which is present in many negligence situations. The defendant further complains because the trial court allowed plaintiffs' expert witnesses to express their opinions that the power line installation at the Fairview Elevator was a hazard, that defendant's employees should have recognized and corrected the hazard, and that the defendant had failed to comply with requirements pertaining to minimum clearance, warning signs, and mandatory inspections set forth in the National Electrical Safety Code. One of the plaintiffs' experts testified that the hazard could easily have been eliminated by relocating the line. We have no hesitancy in holding that this evidence was properly admissible.

K.S.A. 60-456 provides the authority for asking an expert witness for his opinion on an ultimate issue in the case. That statute provides in pertinent part as follows:

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

Such opinion testimony is admissible if it will be of special help to the jury on technical subjects as to which the jury is not familiar if it will assist the jury in arriving at a reasonable factual conclusion from the evidence. In this regard see *Plains Transp. of Kan. Inc. v. King,* 224 Kan. 17, 578 P.2d 1095 (1978); Gard's Kansas C. Civ. Proc. 2d Annot. § 60-456, pp. 205-06 (1979). Under the circumstances in this case, the testimony of expert witnesses in the field of design and construction of electrical distribution systems would be of great assistance to the jury, since that area is not one within the typical juror's common knowledge. Hence, the testimony of plaintiffs' experts on those subjects was admissible.

The defendant next maintains that the trial court erred in not allowing defendant to introduce evidence that the decedent's widow, Kathleen Pape, had remarried in less than seven months after the death of Terry Pape. Defendant argues that, under the Kansas Wrongful Death Act (K.S.A. 60-1901 *et seq.*), evidence of a widow's remarriage is admissible on the question of mitigation of her damages. On this point, we have concluded that the trial court properly excluded evidence of the surviving spouse's remarriage. The overwhelming majority rule throughout the United States is

that damages for wrongful death are determined as of the date of death, and the fact that the surviving spouse has remarried is not a factor for the jury to consider in assessing either pecuniary or nonpecuniary damages of the surviving spouse. This subject is thoroughly discussed in an annotation entitled "Death Action—Evidence of Remarriage" in 88 A.L.R.3d 926, where many cases are cited on the subject. The rule which excludes such evidence is simply an application of the collateral source rule which is generally recognized. Simply stated, the collateral source rule is that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. The rule, which excludes evidence of remarriage of the surviving spouse in a wrongful death action, is mentioned in Gard's Kansas C. Civ. Proc. 2d Annot. § 60-471, p. 301 (1979).

In Kansas, we have no cases exactly on point on the issue of whether evidence of the remarriage of a surviving spouse in a wrongful death action is admissible in mitigation of her damages. Kansas has, however, long recognized the collateral source rule. In *Berry v. Dewey,* 102 Kan. 593, 172 Pac. 27 (1918), the plaintiff, a mother, brought an action for the wrongful death of her son. The defendant contended that the plaintiff, who was the sole heir of the decedent, received a substantial financial benefit as a result of the death of her son and that the benefit should have been deducted from the amount of the verdict. This court, in the opinion, stated that the proposition was untenable and, although it appears to have standing in the courts of some of the states, the proposition does not address itself to the judgment of this court as being sound, legal, equitable, or fair, and it cannot be permitted to reduce the amount of recovery in any way.

In *Southard v. Lira,* 212 Kan. 763, 512 P.2d 409 (1973), a personal injury action, it was held that the trial court properly applied the collateral source rule in excluding evidence of insurance proceeds received by plaintiff. The court relied on *Rexroad v. Kansas Power & Light Co.,* 192 Kan. 343, 388 P.2d 832 (1964). More recently in *Negley v. Massey Ferguson, Inc.,* 229 Kan. 465, 625 P.2d 472 (1981), it was held that it would not be proper in a wrongful death action to disclose to the jury the fact that the surviving spouse was receiving workmen's compensation payments as the result of the death of her husband. It should also be

noted that the United States District Court of the District of Kansas has followed the rule that, in a wrongful death action, evidence that the wife remarried following the wrongful death of the husband should be excluded. See *Nichols v. Marshall,* 486 F.2d 791 (10th Cir. 1973).

In our judgment, the rule which excludes evidence of the remarriage of the surviving spouse in a wrongful death action is sound and in accord with most of the other jurisdictions. The rationale underlying the majority rule is that the cause of action arises at the time of the death and damages are determinable as of that same time. Furthermore, some courts have observed that the rule providing for mitigation of damages because of the surviving spouse's remarriage is highly speculative, because it involves a comparison of the earnings, services, and contributions of the deceased spouse as compared to those predicted from the new spouse. We find no justification to depart from our long recognition of the collateral source rule, as recognized in the cases discussed above.

The defendant next contends that the trial court erred in excluding defendant's proffered evidence as to a purported common-law marriage of decedent, which defendant argues occurred prior to decedent's marriage with the plaintiff, Kathleen Pape Johansen. The record shows that the only evidence proffered by the defendant on this issue was the deposition of Terry Pape's former wife, Pamela Pape. The substance of the deposition was that, following their divorce, Pamela stayed with Terry Pape in his apartment in *Missouri* during 1974. Pamela Pape's deposition clearly established that there was no holding out of the couple as husband and wife in *Kansas* after their divorce and that the living arrangement was merely a tentative trial run "to see if they could make it" and get along. Pamela Pape denied there was ever any agreement by Pamela and Terry that they were married. Terry Pape subsequently married Kathleen, his surviving spouse. and one of the plaintiffs here. This proffered evidence affirmatively negated two essential elements to prove a common-law marriage: (1) a holding out as husband and wife in a state recognizing common-law marriage, and (2) a present marriage agreement between the parties. Under these circumstances, the trial court correctly refused to admit the evidence or submit this issue to the jury because there was no evidence to support the claim of common-law marriage.

It is next contended by the defendant that the plaintiffs' evidence was insufficient to show any conscious pain and suffering of the decedent prior to his death. The jury returned a verdict awarding $2,000 for Terry Pape's pain and suffering between the accident which occurred on February 10, 1978, and Terry Pape's death on February 20, 1978. We have examined the record and concluded that, although not extensive, there was sufficient evidence to justify a finding that Terry Pape suffered conscious pain and suffering from his injuries until his death. When discovered lying at the bottom of the bins, Terry Pape was breathing, had a bloody cut on his head, and was audibly moaning. In response to a request by Kathleen Pape to squeeze her hand if he understood her, Terry Pape squeezed her hand. Notes in the hospital record indicated that Terry Pape was very responsive to pain stimuli. Under the circumstances, we find that there was sufficient evidence to submit to the jury the element of damages of decedent's conscious pain and suffering and to justify an award in the amount of $2,000.

The only other point raised by the defendant which requires comment is that the trial court erred in entering judgment in favor of the plaintiffs when the causal negligence of Terry Pape, when compared with the causal negligence of defendant KP&L, actually equaled 50⅔% as compared with 49⅓% causal negligence of the defendant. The basis of this contention is that the trial court erred in considering the negligence of the employer, which the jury found to be 27⅔%, in calculating causal fault of the parties, since the plaintiffs did not make a claim for recovery *in the action* against Pape's employer, Brockhoff Feed Yards, Inc. Defendant argues that the plaintiffs cannot recover under the provisions of K.S.A. 60-258a(*a*) which permits recovery only if the decedent's negligence was less than the causal negligence of the party or parties *against whom claim for recovery is made.* This same issue was raised and determined in *Negley v. Massey Ferguson, Inc.,* 229 Kan. 465. In *Negley,* the plaintiff's husband, an employee of Orrland, Inc., was electrocuted on the job when a forklift he was operating came in contact with overhead power lines owned and maintained by KP&L. The widow of the workman was paid workmen's compensation benefits for herself and the minor children. The widow then brought a wrongful death action against

the manufacturer of the forklift and KP&L. The jury found KP&L to be 10% negligent, the deceased employee to be 22% negligent, and the employer 68% negligent. The plaintiffs did not sue the employer for recovery in the action, since it had paid workmen's compensation for the death of the employee. The defendant, KP&L, contended, as it does in this case, that the plaintiff could not recover from KP&L, the third-party tortfeasor, because its causal negligence was less than that of the decedent. Citing *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978), and *Langhofer v. Reiss*, 5 Kan. App. 2d 573, 620 P.2d 173 (1980), the court in *Negley*, held that the defendant's position had no merit and that, in applying K.S.A 60-258a(*a*) plaintiff's individual negligence should be compared with the collective causal negligence of all persons found by the trier of fact to have been causally negligent. The same rationale is applicable in this case.

Under the workmen's compensation act the plaintiff was barred from bringing an action against the employer, Brockhoff Feed Yards, Inc. However, the defendant, KP&L, brought in Brockhoff under K.S.A. 60-258a(*c*). We have held in the past that the negligence of such persons brought in under K.S.A. 60-258a(*c*) is to be used for comparison purposes, even though these persons may be immune from liability or have previously settled with the plaintiff. *Brown v. Keill*, 224 Kan. 195, Syl. ¶ 6; *Miles v. West*, 224 Kan. 284, 580 P.2d 876 (1978). We hold that, under K.S.A. 60-258a(*a*), "parties against whom a claim for recovery is made" include all persons whose claimed causal negligence is submitted for determination to the trier of fact. Thus, the plaintiff can recover damages if his or her negligence is less than the combined causal negligence of all persons found by the trier of fact to have been causally at fault. We have, therefore, concluded that the trial court properly entered judgment in favor of the plaintiffs against defendant KP&L based on the jury's findings of causal negligence, not only as to Pape and KP&L, but also as to Pape's employer.

The judgment of the district court is affirmed.