Karen Sue SISK, Wife, Heir-At-Law and Next of Kin of Gerald R. Sisk, Jr., Deceased, and Christopher A. and Matthew R. Sisk, Minors, By and Through Karen Sue Sisk, Their Mother, Natural Guardian, and Next Friend, Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER CORPORATION; the Atchison, Topeka and Santa Fe Railway Company; and the City of Cimarron, Kansas, Defendants.

No. 85–1744–K.

United States District Court, D. Kansas.

Nov. 12, 1986.

Richard D. Cordry, of Michaud, Cordry, Michaud, Hutton & Hutton, Wichita, Kan., for plaintiffs.

Charles W. Harris, of Curfman, Harris, Stallings & Snow, Wichita, Kan. for defendant railroads.

Harry Bleeker, of Turner & Boisseau, Great Bend, Kan. for City of Cimarron.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This case is before the court on a motion to dismiss by defendant The City of Cimarron, Kansas, and motions in limine by plaintiffs, and by defendants National Railroad Passenger Corporation, and The Atchison, Topeka and Santa Fe Railway Company (Railroad). The court heard arguments on these motions on September 24, 1986. The court ruled on the city's motion to dismiss at that time, but took the motions in limine under advisement. Having now thorough- ly reviewed the substance of these motions, the court is prepared to rule.

This case arises from an automobile and train collision which occurred at a crossing in Cimarron, Kansas, on October 10, 1984, resulting in the death of Gerald R. Sisk, Jr. Plaintiffs—the widow and children of the deceased—claim the accident would not have occurred but for the negligence of defendants in maintaining an extrahazard- ous crossing at the intersection in question. Specifically, plaintiffs claim the railroad was negligent in exceeding the speed limits set by the Cimarron ordinance, in failing to evaluate the safety needs and install the appropriate traffic control devices, gates and other safety warning devices at the crossing, in failing to improve the crossing surface, in failing to properly sound the train whistle, in failing to maintain the crossing free of weeds and shrubs which limited sight distance, and in authorizing speeds up to 90 miles per hour for passen- ger trains through the City of Cimarron. Plaintiffs further maintain defendant City of Cimarron was negligent in failing to enforce the speed limit as set by ordinance, in failing to remove brush and shrubs from the crossing, in failing to improve the crossing surface and install gates with flashing signal lights. The defendants deny the crossing was ultrahazardous or that they were negligent in any manner. They contend the decedent's death was the result of a deliberate action—a suicide.

The City of Cimarron (City) has moved the court to dismiss three of plain- tiffs' claims against it: (1) failure to en- force the speed limit; (2) failure to remove brush, weeds and shrubs; and (3) failure to improve the crossing surface. Consistent with the court's statements at the hearing, the city's motion is granted as to the claim for failure to enforce the speed limit, as the Kansas Tort Claims Act, K.S.A. 75-6104(c), immunizes the city from liability for "fail- ure to enforce a law, whether valid or invalid, but not limited to, any ... ordi- nance." Also, defendant's motion is grant- ed as to the claim for failure to remove road obstructions as the property in ques-

tion is owned by the railroad; therefore, pursuant to K.S.A. 8–2011 the city has no duty to remove obstructions or inspect for obstructions on property belonging to another. Further, K.S.A. 75–6104(j) immunizes the city from liability for failure to inspect property which does not belong to the government to determine whether it contains a hazard to public safety.

■ However, the court denies the motion to dismiss the claim that the defendant city was negligent in failing to improve the surface of the crossing. Pursuant to K.S.A. 66–227, the railroad's "surface responsibility" extends only two feet from the outside rails. Questions of fact remain as to the condition of the surface beyond that point and any causal connection to the accident.

The railroad has moved the court for an order in limine precluding the admission in evidence of the city's ordinance limiting the speed of trains through the city to 50 miles per hour. Defendant railroad claims the ordinance is void *ab initio* under the doctrine of federal preemption.

Initially, the court was of the view that the speed of a train through a city was a matter of purely local concern: the city has an interest in protecting the safety of its citizens, and pursuant to an enabling statute (K.S.A. 15–438) the city is authorized to set the speed limit necessary to protect this interest. The court voiced this view at the time of the hearing; however, recognizing a legitimate question of preemption had been raised, the court took the matter under advisement.

■ Having now reviewed the issue thoroughly, the court must find for the reasons stated below that the ordinance in question has indeed been preempted by the Federal Railroad Safety Act of 1970, 45 U.S.C. § 421 *et seq.* (FRSA).

Historically, state and local governments had the right to enact laws to promote safety in railroad operations. *Missouri Pacific Railroad Co. v. Board of Greeley County Comm'rs*, 231 Kan. 225, 643 P.2d 188 (1982). The only restriction was that the laws could not unduly burden interstate commerce. In Kansas, beginning in 1869, cities of the third class were enabled to enact railroad safety laws pursuant to K.S.A. 15–438, as follows:

The council shall have power to regulate· levees, depots, depot grounds and places for storing freight and goods, and to provide for the passage of railways through the streets and public grounds of the city; also, to regulate the crossings of railway tracks, and to provide precautions and prescribe rules regulating the same, and to regulate the running of railway engines, cars and tracks within the limits of said city, and to prescribe rules relating thereto, and to govern the speed thereof, and to make any other and further provisions, rules and restrictions to prevent accidents at crossings and on the tracks of railways, and to prevent fires from engines.

This statute has remained unchanged since 1923.

At the same time, Kansas law imposed on the railroad the principal burden of installing train-activated warning devices at dangerous crossings. *See* K.S.A. 66–231a.

Then, in the 1970s, Congress, recognizing a need for uniform safety standards, enacted the Railroad Safety Act which imposed nationwide standards, reserving authority to the states for further regulation only under special circumstances. In conjunction with the national regulation of railroad safety, Congress determined that grade crossing improvements were a governmental responsibility rather than the responsibility of the railroads and increased funding to the federal aid program. Under the new program, the responsibility for railroad crossing improvements is to be shared 90% by the federal government and 10% by the state and local government. Therefore, as to federal aid projects, state law requiring railroads to share in the cost of work for the elimination of hazards at crossings shall not apply. The significance of the increased funding for railroad crossing improvement under the federal aid program is the government's recognition, in light of

its desire to preserve a national railroad transit system, that public safety at crossings is a matter of concern to the government rather than the railroad, and thus requiring the railroads to share in the cost was overly burdensome.

Likewise, in enacting the FRSA of 1970, Congress sought to eliminate the undue burden on public railroads caused by non-uniform railroad safety regulations:

> To subject a carrier to enforcement before a number of different state administrative and judicial systems in several areas of operation could well result in an undue burden on interstate commerce....

H.R.Rep. No. 91–1194, 91st Cong., 2d Sess., reprinted in [1970] U.S.Code Cong. & Ad. News 4104, 4110.

In enacting the FRSA, 45 U.S.C. § 421 *et seq.*, Congress' stated purpose was "to promote safety in all areas of railroad operations." 45 U.S.C. § 421.

Pursuant to the Act, the Federal Railroad Administration (FRA) established and adopted train speed regulations in conjunction with the adoption of track and roadbed standards and with signal standards. 49 C.F.R. §§ 213, 236. The purpose of these regulations is to establish safe train speeds under differing circumstances. The FRA has established safe operating speeds between 10 miles per hour and 110 miles per hour depending on the condition and curvature of the track and roadbed. These regulations are aimed at reducing the possibility of derailments and train collisions.

Within the City of Cimarron, the FRA has determined trains can operate safely at speeds of 50 miles per hour for freight and 90 miles per hour for passenger. However, the City of Cimarron has in effect an ordinance, No. 13–208, that sets a speed limit for trains passing through the city of 50 miles per hour.

Defendant railroad argues the ordinance has been preempted by the federal law because (1) the FRA has adopted standards regulating the speed of trains, and (2) the ordinance was established by a municipality rather than a state.

The supremacy clause of the United States Constitution establishes that when federal law conflicts with state or local law the federal law must control. Article VI, Clause 2. When reviewing whether a state law or municipal ordinance has been preempted by an act of Congress, the court must find an intent on the part of Congress to preempt the field. This intent may be discerned either through explicit or implicit language of the statute or through a direct conflict between the state and federal statute. *See, e.g., Ray v. Atlantic Richfield*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). In enacting the FRSA, Congress clearly stated its intent of preemption as follows:

> The Congress declares that laws, rules, regulations, orders and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such state requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434.

The legislative history further clarifies Congress' preemptive intent:

> [T]he railroad industry has very local characteristics. Rather, in terms of its operations, it has a truly interstate character calling for a uniform body of regulation and enforcement....

H.R.Rep. No. 91–1194, 91st Cong., 2d Sess., reprinted in [1970] U.S.Code Cong. & Ad. News 4104, 4110.

Moreover, courts which have applied the Act have found an intent to preempt. *See National Assoc. of Regulatory Utility Comm'rs v. Coleman*, 542 F.2d 11 (3d Cir. 1976); *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108 (5th Cir.1973), *cert. denied* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105; *Atchison, Topeka & Santa Fe RR. Co. v. Illinois Commerce Comm.*, 453 F.Supp. 920 (N.D.Ill.1977).

Although the clear intent of Congress was to establish nationally uniform control of railroad safety, the Act—in § 434—specifically authorizes "exceptions" from this uniformity. The first exception applies when no federal regulation has been adopted which covers the subject matter of the law in question. In this case, federal regulations covering the precise subject matter—train speed—have been enacted. Therefore, the first exception is inapplicable.

Under the second exception, the state may continue in force a more stringent law if (1) the state law is necessary to eliminate or reduce an essentially local safety hazard, (2) the law is not incompatible with any federal measure, and (3) the law does not unduly burden interstate commerce. *See Donelon*, 474 F.2d at 1112. Clearly, a law reducing the speed limit within a city in order to protect public safety is more stringent than, and not incompatible with, the rail speed limits set by federal regulation. However, to fall within the second exception the law must clearly have been enacted at the *state* level. *Id.* at 1112. *See also City of Cleveland v. Consolidated Rail Corp.*, 82 C.R.B. 2730 (Cleveland Mun.Ct., Apr. 4, 1983) (local ordinance of 35 mph preempted by F.R.S.A.). The ordinance in question herein was enacted at the local level. Thus, it does not fall within this second exception.

Plaintiffs argue that K.S.A. 15–438 is a clear delegation to local governments of the state's authority to pass laws excepted from the FRSA under § 434. Because this statute was enacted in 1869, some 100 years prior to the passage of the FRSA, and because it is obviously contrary to the clear purpose of the FRSA as it would allow for a multitude of differing local safety standards, this court is of the view that it has been preempted by the FRSA and should not be given effect. Therefore, the local speed limit ordinance in question herein is rendered void and unenforceable.

Plaintiffs contend the ordinance should be admissible to show negligence. Plaintiffs cite *Thomas v. Illinois Central Gulf RR. Co.*, 592 F.2d 1366 (5th Cir.1979), and *Shibley v. St. Louis-San Francisco Ry. Co.*, 533 F.2d 1057 (8th Cir.1976), two federal cases in which evidence of local speed limit ordinances were admitted on the issue of the railroads' negligence. However, these cases are unpersuasive as preemption by the FRSA was not discussed and it can only be presumed that the issue was never raised.

By finding the local speed limit ordinance unenforceable, the court does not intend to convey that it is unconcerned with public safety. The court is simply of the view that Congress intended the railroad safety laws to be nationally uniform due to the public interest that is served by the railroads. In areas where the federal government has not acted, Congress intended that only states—and not local governments—could act. To hold otherwise would be a licensing of widely variant and confusing safety ordinances enacted by a multitude of local governments. In order for a city to protect its safety interests, it must notify the Kansas Corporation Commission that it believes a particular crossing is hazardous. The Corporation Commission may then order the installation of safety devices (K.S.A. 66–231a) or determine what other safety measures are necessitated. In this way, the public's safety is adequately protected.

Because the Cimarron speed limit ordinance is void and unenforceable due to federal preemption, evidence of the ordinance, as well as the train's speed at the time of the accident, will be inadmissible for the purpose of showing the railroad's negligence.

The plaintiffs have filed a motion in limine to preclude defendants from introducing into evidence or mentioning during voir dire or opening or closing statements the following: (1) that plaintiff Karen Sue Sisk, wife of decedent, has remarried; (2) any services being provided Karen Sue Sisk by her new husband; (3) the financial status of Karen Sue Sisk or any money she has received from Social Security; (4) that the decedent's death may have been a suicide. Defendants concede that the collateral source rule precludes introduction of evidence of the widow's financial status or any monies she has received since her husband's death, as her damages are to be ascertained from the date of death. Therefore, the court need address only the admissibility of the widow's remarriage and the defense of suicide.

█ Under Kansas law, evidence of a widow's remarriage is inadmissible for the purpose of mitigation of damages. *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 647 P.2d 320 (1982); *see also Fudge v. City of Kansas City*, 239 Kan. 369, 379, 720 P.2d 1093 (1986). In *Fudge*, the Kansas Supreme Court held the trial court did not abuse its discretion by precluding voir dire of the jurors about whether any of them knew the widow (by her new name) or her current husband. *See also Nichols v. Marshall*, 486 F.2d 791 (10th Cir.1973).

█ This court has no quarrel with the rule that the remarriage of the widow is inadmissible for mitigation of damages. Clearly, the cause of action for wrongful death arises at the time of death, and damages are to be determinable at that time. *Pape*, 231 Kan. at 447, 647 P.2d 320. This is not to say, however, that the widow's true identity must—under all circumstances—be concealed from the jury. In this regard, if and when the widow testifies, she will be accurately and truly identified.

█ In the case at bar, the defendants contend the proximate cause of Gerald Sisk's death was a deliberate action on his part. The court will deny plaintiffs' motion in limine seeking to bar this defense. In order to prove suicide, defendants must establish a motive. The defendants herein allege decedent was despondent because of his wife's intent to leave him for another man. In the court's view, the widow Sisk's remarriage on the heels of her husband's death to the very person she had allegedly planned to leave decedent for may indeed be probative toward establishing a motive. Accordingly, the fact of her remarriage will be admitted for this limited purpose.

Even if suicide were not at issue herein, the court would not be willing to acquiesce in any "facade", the thrust of which would allow the widow to be sworn in under a name which is no longer her own. Additionally, proper instructions will preclude the jury from considering remarriage per se when assessing damages. Therefore, the court declines to invoke Rule 403 to exclude all evidence of the widow's remarriage. Accordingly, plaintiffs' motion in limine is denied as to the evidence of remarriage and suicide.

IT IS ACCORDINGLY ORDERED this 12 day of November, 1986, that defendant The City of Cimarron's motion to dismiss is granted in part and denied in part; defendants National Railroad Passenger Corporation and The Atchison, Topeka & Santa Fe Railway Company's motion in limine is granted; and plaintiffs' motion in limine is granted in part and denied in part. It is further ordered that plaintiffs' motion to amend their complaint, adding a count of negligence against the City of Cimarron, is granted.