No. 72,438

DEBRA A. SIMON, *Appellant/Cross-appellee,* v. GERALD SIMON, *Appellee/Cross-appellant.*

(924 P.2d 1255)

Opinion filed October 25, 1996.

*Jeffrey L. Carmichael,* of Morris, Lang, Evans, Brock & Kennedy, Chtd., of Wichita, argued the cause and was on the brief for appellant/cross-appellee.

*Richard L. Honeyman*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

LARSON, J.: This appeal is before this court for review of the unpublished opinion of the Court of Appeals in *Simon v. Simon*, No. 72,438, filed January 5, 1996.

Debra Simon sued her father-in-law, Gerald Simon, in a premises liability case for personal injuries resulting from her use of a motorized meat grinder while on Gerald's property. After receiving an unfavorable jury verdict, Debra appealed the trial court's rulings on evidentiary matters and motions in limine. Gerald cross-appealed the court's designation of Debra as an invitee and its holding of the duty of care owed her.

The Court of Appeals affirmed the trial court's judgment in part, but reversed the court's ruling that it was not necessary to allow a liability expert to testify and ordered the case remanded for a new trial. We granted Gerald's petition for review.

*Factual Statement*

The tragic facts in this case are not in dispute. In December 1991, Debra and her family went to Gerald's farm to help with the annual butchering of hogs. Family members and neighbors participated.

Debra had been involved in the butchering process approximately eight previous times. In the last several years, she had helped her brother-in-law, Ken Simon, grind meat for sausage, though Ken claimed that he preferred to work alone. Debra had not received instructions concerning the motorized grinder or been warned of the dangers of the device.

The grinder has a small bell area where meat is deposited, with an auger at the bottom of the bell that draws the meat toward the grinder blades. The grinder had been motorized some 35 years prior to the accident by the addition of a pulley attached by a belt to an electric motor. The grinder did not have an on-and-off switch and was stopped by pulling the plug from the electrical outlet.

Most of the equipment used in the butchering process was owned by Gerald. Neighbors Charles Vierthaler and Sylvester

Adelhardt had used Gerald's grinder until their recent purchase of commercial grinders. Their grinders were equipped with much larger and deeper bells, guards, food trays, and an on-and-off switch, making an injury such as the one Debra suffered preventable.

Debra's injury occurred when she was putting scraps into the grinder and glanced away to check on her children. When she looked back, her right hand was inside the grinder, resulting in the loss of four fingers. Debra cannot utilize a functional prosthesis and wears only a cosmetic device.

Debra's suit against Gerald alleged negligence in providing a dangerous grinder, failing to provide warnings and instructions about the grinder, and failing to maintain his premises in a safe condition. Before trial, Gerald filed a motion in limine to exclude the expert testimony of Denzell Ekey, a safety engineer, and Dr. Richard Gibson, a vocational analyst and counselor and, at trial, moved to preclude Debra from exhibiting to the jury Vierthaler's and Adelhardt's grinders.

Ekey was expected to testify concerning the dangerous nature of Gerald's grinder, that this dangerousness would not be immediately apparent, and that an operator could easily become distracted while using the grinder. He also would have reported on the availability of safer grinders with safety features, as well as on the safety standards in the industry. Gerald objected to the necessity for the expert testimony and claimed that the dangerous propensities of the grinder were obvious and easily apparent to jurors. Gerald also argued this was a premises liability and not a products liability case. The trial court granted Gerald's motion on the grounds that the dangerousness of the grinder was readily apparent and that Ekey's testimony was unnecessary. Debra properly preserved the issue for appeal.

Debra desired to have Dr. Gibson testify about damages relating to lost income and the value of lost household services. Gerald objected to the lost income testimony because Dr. Gibson only relied on national statistics without accounting for any of Debra's specific characteristics such as education, training, experience, residential locality, or the nature of her disability. Additionally, Gerald

objected to Dr. Gibson's testimony on the grounds that he failed to qualify as an expert in economics. The trial court eventually sustained both objections, finding the lost income testimony to be too speculative and disconnected from reality and ruling that Dr. Gibson did not meet foundational qualifications to testify as an expert on the value of household services.

During the trial, Gerald moved to preclude the exhibition of Vierthaler's and Adelhardt's grinders in order to keep the focus on Gerald's grinder, rather than comparing it to other grinders. Testimony had been presented by both men concerning the properties of their grinders. The court excluded admission and exhibition of the grinders, ruling this evidence was cumulative and more prejudicial than probative.

At the close of the evidence, the parties disagreed as to Debra's status on the property. The trial court concluded that Debra was an invitee rather than a licensee and so instructed the jury.

The jury found Debra 75% at fault and Gerald 25% at fault. The question of damages was not reached. Judgment for Gerald was entered. Debra appealed, raising as issues the exclusion of her expert witnesses and the right to admit and exhibit the two grinders. Gerald cross-appealed the court's decision to designate Debra as an invitee and the corresponding duty of care that was submitted to the jury.

*Did the trial court abuse its discretion in excluding the testimony of Debra's liability expert?*

The admission of expert testimony is governed by the provisions of K.S.A. 60-456(b) and (d), which read as follows:

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

. . . .

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

It is a well-established rule in Kansas that the qualification of an expert witness and the admissibility of expert testimony are matters within the broad discretion of the trial court. *Sterba v. Jay,* 249 Kan. 270, 282, 816 P.2d 379 (1991); *Taylor v. Maxwell,* 197 Kan. 509, 511, 419 P.2d 822 (1966). A party claiming an abuse of the trial court's discretion bears the burden of showing such an abuse. *Marshall v. Mayflower Transit, Inc.,* 249 Kan. 620, Syl. ¶ 8, 822 P.2d 591 (1991).

The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision. *Hoffmann v. Haug,* 242 Kan. 867, 873, 752 P.2d 124 (1988); see *Fusaro v. First Family Mtg. Corp.,* 257 Kan. 794, 804, 897 P.2d 123 (1995).

In *McKissick v. Frye,* 255 Kan. 566, 577, 876 P.2d 1371 (1994), we stated:

"The trial court is vested with vast amounts of discretion in the admission of evidence during the trial. Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts and situations which occur prior to and during the trial. *Hurlbut v. Conoco, Inc.,* 253 Kan. 515, 529, 856 P.2d 1313 (1993)."

In *Marshall v. Mayflower Transit, Inc.,* 249 Kan. at 626, a case dealing with the admissibility of expert testimony of an accident reconstructionist, Justice Abbott summarized the basic reason for allowing an expert to testify when he stated:

" 'Expert opinion testimony is admissible if it will be of special help to the jury on technical subjects [with] which the jury is not familiar or if such testimony [will] assist the jury in arriving at a reasonable factual conclusion from the evidence.' *Sterba v. Jay,* 249 Kan. 270, 282, 816 P.2d 379 (1991); *Falls v. Scott,* 249 Kan. 54, 63, 815 P.2d 1104 (1991). 'The basis for the admission of expert testimony is *necessity,* arising out of the particular circumstances of the case.' *Falls,* 249 Kan. 63. (Emphasis added). '[If] the normal experience and qualifications of jurors permit them to draw proper conclusions from [the] given facts and circumstances, expert conclusions or opinions are not necessary.' *Sterba,* 249 Kan. at 282-83; *Falls,* 249 Kan. at 63. Obviously, the trial court has considerable discretion in determining whether to permit expert testimony."

In applying these standards to the present situation, Debra bears a difficult burden in showing an abuse of the trial court's discretion.

The trial court held a full and comprehensive hearing on the issue, fully understood the factual situation, and properly exercised its discretion when it made the following comments and rulings:

"Falls v. Scott really does pretty closely compare to our factual situation in many respects . . . . [L]ooking at that case and comparing it to this case, I have to conclude that Mr. Ekey's testimony, judged on the standard of necessity only, whether it would clarify or aid or assist the jury in some respect, probably his testimony is not necessary to allow them to understand what went on in this case and the nature and extent of any danger that the Plaintiff was allegedly exposed to. I say that for a couple of three reasons. If you read his report, number one, he indicates the grinder and motor lacked belt and pulling [sic] guarding. That's not anything that other witnesses present on the date that this occurred could not testify to. . . .

. . . .

". . . The fact that the grinder lacked any warnings would be able to be testified to by the people that were present that day. And likewise that will be obvious from visible and visual examination at trial. Same goes for the on/off switch. . . .

. . . .

"And to be honest as I can about it, in this case it's not much different than the brush hog case. The brush hog case, Falls v. Scott case, that—the question was . . . did the operator know that that could throw things out at a dangerous rate of velocity and was likely to injur[e] somebody. And that wasn't too hard to figure out. And likewise Mr. Simon—To be as honest as I can about it, everybody knows that a meat grinder can grind things other than meat if you're not careful. . . .

". . . I think any ultimate conclusions about it being 'unreasonably dangerous' or being negligence would be totally improper and I don't find that any of the three things that he refers to other than that are things that are of necessity because it will be clear that the grinder and motor lacked belt and pulling [sic] guarding and that it lacked any warnings and that there wasn't an on/off switch. . . . For all of those reasons, I think that his testimony would not be necessary or helpful in this case. I'll grant the Motion in Limine.

"Now he certainly can be present here. And I suppose . . . if Mr. Simon or someone would disagree that there was this guarding or disagree that there were warnings or disagree that there was some other way to start or stop this besides pulling it in and out, then we might have some factual problem. I don't anticipate that happening. . . . And I wouldn't allow him to get to the ultimate issue in using the terminology he—he's used and contributing negligence and not allowing him to see. Certainly the ANSI standards and all of that I don't think were applicable to this factual situation."

The trial court relied on our recent case of *Falls v. Scott*, 249 Kan. 54, 815 P.2d 1104 (1991), which was a personal injury neg-

ligence action where the plaintiff was injured when a "brush.hog" being operated on adjacent property threw a piece of wire into Falls' face and eyes. A brush hog is a large mowing machine designed to cut brush, small trees, or high weeds and grass and is pulled and powered by a tractor. 249 Kan. at 56.

Scott moved to prevent plaintiff's expert from testifying. The trial court determined the witness could not testify as to:

"(1) whether the activity in question was negligence or not negligence or (2) whether the operation of the brush hog was inherently dangerous or that the brush hog was a dangerous instrumentality. The trial court [in. Scott] stated the plaintiff's expert could testify as to the construction, operation, and other matters pertaining to the brush hog, without using any legal words of art in his characterizations or descriptions." 249 Kan. at 62.

At trial, the plaintiff's expert witness did not testify.

Falls argued that the workings of a brush hog are not within the common knowledge of jurors, so expert testimony was necessary to help the jury in arriving at a reasonable factual conclusion from the evidence. He asserted that technical facts required expert testimony to explain the responsibility of using a brush hog within city limits.

In upholding the trial court's decision denying admissibility of the expert's testimony and finding that such was not an abuse of discretion, Justice Lockett stated:

"The basis for the admission of expert testimony is necessity, arising out of the particular circumstances of the case. Where the normal experience and qualifications of jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are not necessary. There is nothing complicated or complex about the mechanical operation of a brush hog nor is a brush hog such a complicated machine that expert testimony is required to assist the jury in arriving at a reasonable factual conclusion from the evidence. The trial court did not abuse its discretion by excluding the expert testimony." 249 Kan. at 63.

Our factual situation is much like *Falls v. Scott*. There is nothing complicated about the operation or construction of Gerald's meat grinder. The grinder was admitted into evidence, and the jurors could see for themselves that it did not possess guards, warnings, or an on-and-off switch. During cross-examination, Debra admit-

ted it was apparent that if one stuck one's hand into the auger of the grinder, one could be injured.

The availability of other, safer meat grinders on the day of the accident was undisputed. Witnesses adequately described those grinders and depicted their safety devices. Gerald agreed that Debra would not have been injured on the other grinders. Thus, it is clear that expert testimony was not necessary to describe the dangerousness of Gerald's grinder or the availability of safer grinders.

Debra contends the trial court misapplied *Falls v. Scott* because the trial court there did not completely exclude the expert testimony. Contrary to this contention, the trial court here specifically said that Ekey could be present and testify if any factual inconsistencies concerning the equipment came into being. Regardless, this claimed distinction is without a difference of significant nature in light of the trial court's broad discretion in governing the admission of expert testimony. It is difficult to find fault with the trial court's reasoning that the operation of the grinder was readily apparent and fully understood by the jury without the necessity of the expert's opinion.

Debra also contends that she should have been able to elicit testimony from Ekey regarding industry standards. Those standards, however, are not applicable in this case. Some of the standards were not adopted until a number of years after Gerald made changes to his grinder. Although Debra contends industry safety standards are applicable to everyone, the sources she proffered do not support this contention. The purpose and scope of these publications are geared heavily toward regulating the manufacture of equipment designed for industrial uses. The standards do not appear to mandate the modification of preexisting equipment, and we hold the trial court did not abuse its discretion in refusing to allow Ekey to testify as to such standards.

Debra's reliance on *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1099 (10th Cir. 1991), is misplaced. *Wheeler* involved a case against the John Deere Co. as the manufacturer of combines. The holding in *Wheeler* relates to a manufacturer's duty of care for products sold in the marketplace. Gerald does not fit under the K.S.A. 60-3302(b) definition of a manufacturer because he is not a "product

seller who designs, produces, makes, fabricates, constructs or re-manufactures the relevant product or component part of a product before its sale to a user or consumer."

Although the Court of Appeals cites *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 647 P.2d 320 (1982), as being supportive of applying industry standards to our case, *Pape* does not support the issue before us. Applying safety standards set forth in the National Electric Safety Code to KP&L, which was charged with knowledge of the code and compliance with it, differs from applying industry standards to a motorized homemade meat grinder.

Our view that industry standards do not apply in this case is not changed by Debra's citation of 57A Am. Jur. 2d, Negligence § 186, p. 237, which states: "Safety standards promulgated by government and other safety organizations . . . may constitute relevant evidence in regard to the standard of care in a particular case." This section must be read in conjunction with the surrounding sections, all under the heading: Evidence Relating to Trade or Business Practice or Custom. Section 188 provides:

"An individual should not be held to a specific standard of conduct as indicated by an industry custom of which he has no knowledge and for which awareness cannot be reasonably charged. It is not reasonable to charge a person with knowledge of practices which were not in effect at the time of the conduct in question, or to charge a layman with knowledge of the practices of industry." 57A Am. Jur. 2d, Negligence § 188, pp. 239-40.

The next section goes on to explain: "Expert testimony concerning custom or industry practices, however, is not relevant, or at least unnecessary, where the jury is competent from its own experience to determine and apply the reasonable care standard." 57A Am. Jur. 2d, Negligence § 189, p. 240.

We hold the trial court did not abuse its discretion or commit reversible error in not allowing Ekey to testify as to industry standards.

Finally, Debra cites no specific authority for Ekey being allowed to testify concerning human factors and how distractions occur in the operation of machinery. Also, she presented no authority to support the conclusion that the exclusion of such testimony was reversible error. Further, 31A Am. Jur. 2d, Expert and Opinion

Evidence § 390, p. 387, states the "testimony of a human factors expert is not admissible where it simply evaluates commonplace situations and occurrences which are within the comprehension and understanding of the average juror."

This is certainly the situation in this case. The trial court made a proper analysis and reached a conclusion which it was entitled to make. We will not on appeal substitute our judgment for that of the trial court. We hold the trial court did not abuse its discretion in refusing to allow the expert testimony for all of the reasons above set forth.

*Did the trial court abuse its discretion in refusing to admit and allow to be exhibited the Vierthaler and Adelhardt meat grinders?*

Debra claims the meat grinders owned by Vierthaler and Adelhardt should have been admitted into evidence and exhibited to the jury to prove Gerald knew that safer models were available and to help the jury evaluate the reasonableness of his conduct. Debra suggests the grinders were not adequately described and the jury was unable to decide upon the feasibility of borrowing other grinders.

Gerald contends the exclusion of the grinders owned by Adelhardt and Vierthaler was proper because they had no tendency to prove any material fact. Gerald, by his own testimony, clearly admitted that these other grinders were available for him to use, that they were safer, and that Debra would not have been injured had she used one of them. He described the grinders and their safety features. Vierthaler and Adelhardt also depicted their respective grinders, while counsel drew sketches for demonstrative purposes from their testimony. The dimensions and weights of the grinders were provided, as well as their size in relation to Gerald's grinder, which was already on display.

Quite simply, the facts which Debra claims the grinders would have proven were not in dispute. It is reasonable to conclude that viewing the grinders would not have provided the jurors with any additional information to assess the reasonableness of Gerald's conduct.

Rulings on relevance rest in the sound discretion of the trial court. *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 9, 899 P.2d 1013 (1995). "Relevant evidence is evidence having any tendency in reason to prove any material fact and the determination of relevancy is a matter of logic and experience, not a matter of law." *McGuire v. Sifers*, 235 Kan. 368, 371, 681 P.2d 1025 (1984).

While testimony concerning the neighbors' grinders was certainly relevant, the trial court had discretion to exclude the grinders as cumulative and prejudicial. *Betts v. General Motors Corp.*, 236 Kan. 108, 114-15, 689 P.2d 795 (1984), teaches us that "a trial court has a right to reject relevant testimony where the evidence is cumulative of facts established or where the probative value of the relevant evidence is outweighed by the risk of placing undue emphasis on some phase of the lawsuit with possible prejudice resulting."

In *Betts*, we found it was not error to exclude certain exhibits of alternative fuel tank designs. There, the defendant admitted the existence of alternative designs, and evidence of alternative designs was introduced at trial. We held there was no error in excluding evidence which the trial court found cumulative and potentially prejudicial as to the location of fuel tanks on later model cars. 236 Kan. at 114-15.

More than sufficient evidence supports the trial court's finding that presentation of the grinders would have been cumulative of other evidence. It is reasonable to believe, as the trial court did, that introducing the grinders would have been prejudicial and would have focused the jury's attention onto these other grinders and away from Gerald's grinder and the reasonableness of his conduct.

The Court of Appeals held the admission and exhibition of the meat grinders was not required. As to this issue, we agree with its opinion.

Because of the result we reach, the trial court must be affirmed. It is therefore not necessary for us to consider or comment on the refusal of the trial court to admit Debra's damages expert because the issue of damages was properly never reached. Additionally, we need not comment on Gerald's cross-appeal as to Debra's status

on the property or the manner in which the trial court so instructed.

The judgment of the Court of Appeals requiring admission of the testimony of the liability expert and ordering a new trial is reversed. The judgment of the Court of Appeals upholding the trial court's refusal to admit the grinders in evidence is affirmed. The judgment of the trial court is affirmed.

ABBOTT, J., not participating.
RON ROGG, District Judge Retired, assigned.