No. 64,769

LOIS E. STERBA, Individually, and on Behalf of the Heirs of SCOTT A. BEECHAM, Deceased, *Appellee/Cross-Appellant*, v. TOMMY L. JAY, *Appellant*, and W.B. CARTER CONSTRUCTION COMPANY, *Appellant/Cross-Appellee*.

(816 P.2d 379)

Opinion filed August 7, 1991.

*Gaye B. Tibbets*, of Foulston & Siefkin, of Wichita, argued the cause, and *C. A. Beier*, of the same firm, was with her on the briefs for appellant Tommy L. Jay.

*Bryce A. Abbott*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, argued the cause, and *M. Duane Coyle*, of the same firm, was with him on the briefs for appellant/cross-appellee W.B. Carter Construction Company.

*Craig Shultz*, of Shultz & Webb, Chartered, of Wichita, argued the cause and was on the briefs for appellee/cross-appellant Lois E. Sterba.

The opinion of the court was delivered by

LOCKETT, J.: This is a wrongful death action arising out of a December 1987 motor vehicle/pedestrian accident in which plaintiff Lois E. Sterba's son, Scott A. Beecham, was struck and killed by a pickup driven by defendant Tommy L. Jay, an employee of defendant W.B. Carter Construction Company (Carter). Beecham was employed as a street maintenance worker for the City of Wichita. On December 22, 1987, Beecham and a fellow worker, Michael Keeling, were "cold patching" potholes on K-42 highway. Keeling was driving a city dump truck, using six yellow flashers, two located on top of the truck and four on the rear of the truck, as warning devices while they were cold patching. The dump truck had just stopped in the curb lane of the four-lane highway a few feet in front of the area to be cold patched. Beecham exited the right side of the truck and proceeded to the back of the truck to begin cold patching. He was wearing an orange caution jacket and a green helmet. Where the cold patching was to be done, K-42 is a divided four-lane highway with a 50 mph speed limit. Approximately 8 to 20 seconds later

the pickup Jay was driving for Carter struck and killed Beecham and then collided with the city dump truck.

An investigating officer testified that there were 14 feet of ghost skid marks left by the pickup prior to striking Beecham, who was standing approximately 18 feet behind and facing the dump truck. Ghost skid marks occur when brakes stop a tire, causing the tire to clear debris on the road surface prior to the time when the tire heats sufficiently to lay down skid marks. The impact of the pickup colliding with the dump truck moved the dump truck, which was not in gear, approximately 20 feet forward. Keeling told the investigating officers there was no other vehicle in the area when Beecham was struck by the pickup.

At the hospital, Jay told the investigating officers he was traveling about 35 to 40 mph when the dump truck stopped in front of him. Jay later told the officers that another truck stopped in front of him, causing him to move into the curb lane where he hit the dump truck.

The case was tried twice. At the conclusion of the evidence at the first trial, Carter requested an instruction on K.S.A. 8-1531(a), and Sterba requested an instruction based on K.S.A. 8-1531(a) and (b). The trial judge refused to give either of the requested instructions. The jury compared the fault of the decedent, the City of Wichita, and Jay. The jury attributed 5% fault to Beecham, 30% fault to the City of Wichita, and 65% fault to defendant Jay and awarded damages totalling $52,781.81.

Sterba filed a motion for a new trial, claiming the trial court erred (1) in refusing to instruct the jury on K.S.A. 8-1531(a) and (b) and (2) in allowing the jury to compare Beecham's negligence. The trial court ruled (1) it had erred by failing to instruct the jury on K.S.A. 8-1531(b) and (2) the jury should not have compared decedent's fault because there was no evidence of negligence by the decedent. It granted plaintiff's motion for new trial but limited the new trial to the issue of liability.

Most of the evidence introduced during the second trial was similar to that of the first trial. Robert L. Loveland, street maintenance supervisor for the City of Wichita, testified that the 1985 Manual on Uniform Traffic Control Devices (MUTCD) was in effect at the time of the accident. He stated Part VI of the MUTCD, entitled "Work Zone Traffic Control Standards and

Guidelines," was used by the street maintenance department for safety guidelines. Loveland said that the guidelines were used on any job performed by street maintenance workers.

Loveland described the operation the decedent was involved in as mobile operations. During cross-examination he was asked to read to the jury the mobile operations section under the Work Zone Traffic Control Standards and Guidelines found in the MUTCD, which on its face required traffic-control devices, such as vehicles with flashing lights, to be used with mobile operations.

Loveland stated it was not mandatory that the Work Zone Traffic Control Standards and Guidelines found in the MUTCD be followed while the work was being performed on K-42. In addition, a bad winter storm required the use of 16-20 crews to cold patch city streets. Because of the storm, there were not enough second or "shadow" vehicles, which follow the city road repair trucks to help alert approaching motorists, for use by all of the street crews.

After all the evidence had been submitted, the trial court sustained Sterba's motion for directed verdict, ruling there was no evidence that decedent or Keeling was negligent. Sterba then moved for a directed verdict, claiming there was no evidence that the City of Wichita was negligent. The court took the motion for directed verdict on the negligence of the City of Wichita under advisement and submitted the case to the jury. The jury instructions included an instruction based on K.S.A. 8-1531(b). The jury returned a verdict finding the defendants 60% at fault and the City of Wichita 40% at fault.

After the verdict, Sterba again moved for a directed verdict, claiming the defendants had failed to show the City was negligent. The trial court questioned whether Loveland was an expert and whether the defendants were required to present expert testimony as to whether the City of Wichita was negligent. The defense argued that the MUTCD had the force and effect of law and that the jurors as drivers could understand the provisions contained in the Work Zone Traffic Control Standards and Guidelines without expert testimony. The district judge subsequently granted the plaintiff's motion, determining that the defendants failed to submit expert testimony regarding the City's duty under the MUTCD to properly protect its worker. The district court

entered judgment for $52,781.81 against the defendants, the amount of damages determined by the jury at the first trial.

The defendants now appeal the district court's order setting aside the liability portion of the jury's verdict in the first trial and granting a new trial on this issue. Defendants also appeal the trial court's finding at the second trial that the defendants were required to produce expert testimony to establish a standard of care by the City of Wichita. Sterba cross-appeals claiming that the trial court erred in not granting a new trial, after the first trial, on the issue of damages. She requests a new trial if the second verdict is not affirmed by this court.

Carter first contends the trial court erroneously determined it had failed to give an instruction on K.S.A. 8-1531(b) and improperly granted a new trial.

A new trial may be granted to all or any of the parties on all or part of the issues when it appears that the rights of the parties are substantially affected. The grounds for granting a new trial pursuant to K.S.A. 60-259 are exclusive and limit the power of the trial court to grant a new trial. The court must comply with the substance of the statute as well as the form. Because one of the grounds specified in the statute exists, *i.e.*, erroneous instructions, the granting of a new trial rests in the sound discretion of the trial court, and an order granting or refusing a new trial will not be reversed on appeal unless a clear abuse of discretion is shown. *Sulkis v. Zane*, 208 Kan. 800-802, 494 P.2d 1233 (1972).

At the first trial, Carter requested an instruction based on K.S.A. 8-1531(a). Sterba requested instructions based on K.S.A. 8-1531(a) and (b).

K.S.A. 8-1531 provides:

"(a) The driver of a vehicle shall yield the right-of-way to any authorized vehicle or pedestrian actually engaged in work upon a highway within any highway construction or maintenance area indicated by official traffic-control devices.

"(b) The driver of a vehicle shall yield the right-of-way to any authorized vehicle obviously and actually engaged in work upon a highway whenever such vehicle displays flashing lights meeting the requirements of K.S.A. 8-1731."

In its memorandum opinion granting plaintiff's motion for new trial, the trial court noted that when the parties originally argued

the jury instructions, it had decided that subsection (b) of K.S.A. 8-1531 did not apply because the statute referred to a vehicle rather than to a pedestrian behind a vehicle. The court now believed an instruction under subsection (b) should have been given because defendants' violation of that statute would be negligence causally connected with the death of Beecham as a result of his physical proximity to the dump truck. The court believed its failure to instruct on K.S.A. 8-1531(b) caused the jury to determine that Beecham was 5% at fault.

Now, on appeal, Carter argues that the trial court did not err in refusing to instruct the jury pursuant to either subsection (a) or subsection (b) of K.S.A. 8-1531. Carter states that subsections (a) and (b) deal with different situations. He now asserts that subsection (a) did not apply due to the absence of any evidence that plaintiff's decedent was working within a highway construction or maintenance area indicated by official traffic-control devices. And, further, Carter argues subsection (b) did not apply because it refers only to vehicles obviously and actually engaged in work upon a highway and not to pedestrians engaged in such work. Carter says to hold otherwise would negate the requirement of subsection (a) that official traffic-control devices be employed to indicate highway construction or maintenance areas where pedestrians are working and would allow street and highway maintenance departments to ignore safety requirements for pedestrian workers.

Plaintiff argues the city truck met the requirements of both subsections. With respect to subsection (a), plaintiff contends the testimony of Loveland indicated the numerous flashing signals and lights on the dump truck, in conjunction with the orange vest and the daylight hours, were official traffic-control devices indicating the area where maintenance was being performed. Plaintiff also asserts the dump truck displayed flashing amber lights that met the requirements of K.S.A. 8-1731 and concludes Jay's failure to yield the right-of-way to the dump truck, as required by subsection (b), caused Beecham's death.

We agree with Carter's argument that K.S.A. 8-1531(b) does not apply to the facts of this case. That portion of the statute clearly requires the driver of a vehicle to yield the right-of-way to authorized vehicles obviously and actually engaged in work

upon a highway and displaying flashing lights meeting the requirements of K.S.A. 8-1731. To extend the area of protection beyond individuals within or upon the vehicle working upon the highway to a pedestrian actually engaged in work upon a highway goes beyond the intent of the statute. The trial court improperly instructed the jury in the second case when it gave an instruction on K.S.A. 8-1531(b).

We disagree with Carter's assertion and the trial court's determination that K.S.A. 8-1531(a) does not apply. That section of the statute requires the driver of a vehicle to yield the right-of-way to any authorized vehicle or pedestrian actually engaged in work upon a highway within any highway construction or maintenance area indicated by official traffic-control devices. Beecham was a pedestrian engaged in work upon a highway. K.S.A. 8-1531(a) does not define or describe a maintenance area indicated by an official traffic-control device. The only question remaining for the judge to determine was whether Beecham was working within a highway maintenance area indicated by an official traffic-control device.

K.S.A. 8-1731 requires the secretary of transportation to adopt rules or regulations establishing specifications and rules governing the design and use of special flashing lights on vehicles engaged in highway construction or maintenance operations. As required by statute, the secretary of transportation promulgated K.A.R. 36-18-4, which requires construction and maintenance vehicles to be equipped with amber lights which meet or exceed the standards approved by the Society of Automotive Engineers Standard J99 as of April 1980. The standard requires such vehicles to have at least two amber flashing warning lamps, as widely spaced laterally as practicable, visible from both front and rear and mounted at the same level, and placed at least 42 inches high. The lamps are to flash in unison.

K.S.A. 8-1507(a) requires the driver of any vehicle to obey the instructions of any official traffic-control device placed in accordance with the provisions of the Uniform Act Regulating Traffic on Highways. Amber lights placed upon a highway construction or maintenance vehicle are traffic-control devices. Here, the six amber flashing lights placed on the maintenance vehicle were official traffic-control devices indicating an area where mainte-

nance was being performed. A driver of a vehicle must yield the right-of-way to any pedestrian engaged in work upon a highway in a maintenance area indicated by a vehicle displaying flashing amber lights. The trial court should have given an instruction based on K.S.A. 8-1531(a).

It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole and, where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct and the jury could not reasonably be misled by them, the instructions will be approved on appeal. *Trout v. Koss Constr. Co.*, 240 Kan. 86, Syl. ¶ 1, 727 P.2d 450 (1986).

Was the failure to instruct the jury on the duty imposed by K.S.A. 8-1531(a) reversible error that requires a new trial? Here, the only instructions in the record are the instructions from the second trial. We do find, however, the failure to give an instruction on K.S.A. 8-1531(a) at either trial requires a new trial.

Defendants next contend the trial court erred by ruling that, as the jury should not have been allowed to compare decedent's fault in the first trial, decedent's negligence would not be submitted to the jury in the second trial.

The parties agree that the evidence of Beecham's negligence was substantially the same in the second trial as in the first. Jay notes there is additional testimony at the second trial that an autopsy showed Beecham was facing away from oncoming traffic and turned toward it at the last second.

The standard of appellate review of a motion for directed verdict requires this court to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and when the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. *Holley v. Allen Drilling Co.*, 241 Kan. 707, 710, 740 P.2d 1077 (1987).

Usually, a determination of the presence or absence of negligence should be left to the trier of fact. We have noted, however, that where no evidence is presented on a particular issue, or the evidence presented is undisputed and it is such that the minds of reasonable persons may not draw differing inferences and arrive at opposing conclusions with reason and justice, the matter becomes a question of law for the court's determination. *Sampson v. Hunt*, 233 Kan. 572, 578, 665 P.2d 743 (1983).

In *St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043 (1989), a vehicle driven by plaintiff's decedent was struck by a vehicle that ran a stop sign. The collision killed both drivers. The intersection was uncongested and both drivers had an unobstructed view of the intersection and oncoming traffic for approximately one-quarter mile. Defense counsel contended that a reasonable person could find that the decedent failed to maintain a proper lookout or otherwise exercise due care under the circumstances, making the question of decedent's fault a matter for the jury's determination. We stated that the evidence did not show decedent was aware of the approaching vehicle. Evidence that decedent had an unobstructed view of the intersection would not support a finding that she failed to keep a proper lookout. "There is no evidence that [decedent] failed to keep a proper lookout or that, assuming she did not, it was to any degree the proximate cause of the collision." 245 Kan. at 419. We stated:

"Although normally a determination of whether someone failed to keep a proper lookout would involve a question of fact to be decided by the jury, the evidence presented here is undisputed that the cause of this accident was [Denny's] failure to stop at the posted stop sign. Even viewing the evidence in the light most favorable to the defendants, as this court must do, the minds of reasonable persons could not differ in concluding that the cause of this accident was [Denny's] failure to stop, not [decedent's] failure to keep a proper lookout." 245 Kan. at 420.

In reviewing the evidence cited by defendants, we note it is a close question, but we fail to see the defendants' claimed inference that decedent failed to maintain a proper lookout or that there existed some other negligence on decedent's part. The additional evidence cited by Jay adds nothing to the evidence adduced at the first trial that would allow a reasonable inference

that Beecham was in any way negligent or failed to keep a proper lookout.

The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision. *Hoffman v. Haug,* 242 Kan. 867, 873, 752 P.2d 124 (1988). Here, it cannot be said that no reasonable person would agree with the trial court that there was no evidence Beecham failed to maintain a proper lookout or was otherwise negligent. Thus, the trial court did not abuse its discretion and did not err in granting plaintiff's motions for new trial and directed verdict on grounds the jury should not have been allowed to compare Beecham's fault.

Jay next contends the trial court erred in instructing the jury at the first trial that pecuniary loss other than medical and funeral bills was an element of plaintiff's damages. Carter does not appeal this issue. At the first trial, plaintiff was awarded $5,000 for other pecuniary loss.

K.S.A. 1990 Supp. 60-1903(e) states: "In any wrongful death action, the trial court shall instruct the jury only on those items of damage upon which there is some evidence to base an award."

Jay states that the trial court's instructions allowed the jury to award pecuniary damages for loss of services, attention, filial care and protection, and financial support that the deceased would have contributed to the parent during the remainder of the deceased's lifetime. Jay contends there is no evidence of any financial loss to Sterba because of Beecham's death. He asserts that Sterba testified that she was providing Beecham with occasional financial support and Beecham never sent money to his mother.

Sterba did testify Beecham put up about $1,500 to help her open a sandwich shop. He worked in the sandwich shop in January and part of July and August 1987. Sterba also testified that the day Beecham died had been planned to be his last day working for the City of Wichita and that he was planning to move back to Alva, Oklahoma, where Sterba lived, and to help in the sandwich shop.

The jury instructions from the first trial are not included in the record on appeal; therefore, we do not know what instructions

were given to the jury. The instructions from the second trial are in the record, but the only issue in the second trial was liability, not damages. The burden is upon the appellant to designate a record sufficient to present his or her points to the appellate court and to establish the claimed error. *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 399, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988). Jay has failed to meet this burden and his contention, therefore, is without merit.

The next issue relates to the negligence of the City of Wichita. At the conclusion of the evidence in the second trial, plaintiff moved for a directed verdict claiming there was no evidence of negligence by the City. The court took the motion under advisement. In her motion for a directed verdict, plaintiff made no reference to a need for, or lack of, expert testimony relative to the City's negligence for failing to properly protect its worker.

Three weeks later, on January 4, 1990, the trial court granted plaintiff's motion for directed verdict, concluding that no expert testimony had been introduced as to the negligence and fault of the City of Wichita and that such was necessary in order to submit the matter to the jury. The court stated:

"[W]hile the jury was deliberating, I reached the conclusion that I should have sustained the motion for directed verdict in favor of the plaintiff. In the first trial and the second trial the same issue came up, and that is, as I continually think that through, the issue of a violation of legal duty of anyone connected with the City. I now am of the opinion that requires expert testimony, and that's a threshold evidence opinion, in the Court's opinion. That's the second thing that does not appear on the record, and that's the second thing that the jury wanted to talk about was exactly that issue, and that's what made deliberations so difficult. They couldn't figure out how to decide if there was a breach of duty. What they, specifically, asked me was, simply, that, and they hit the nail right on the head. I think they said, 'Doesn't it take an expert to tell us about this?' And that's actually the question they were asking me in the jury room when I talked to them, and I'd already decided about ninety-eight percent sure that that was correct, and it seems to me to be overpowering that that's exactly what tangled up the deliberations, and I think that the jury was furnished with instructions and a challenge that, legally, a jury couldn't comply with, in the Court's opinion. At this point, the Court will sustain plaintiff's motion for a directed verdict that the Court took under advisement, for that latter reason, that is, the requirement of expert testimony, and the opinion to establish a violation of duty under the unusual circumstances of this case."

Neither the MUTCD nor Part VI of the MUTCD, the Work Zone Traffic Control Standards and Guidelines, is included in the record. Only pages 6-54 and 6-61 of the manual were admitted into evidence. Page 6-54 is a diagram titled "Typical Application—Daytime Maintenance Operations of Short Duration on a Four-lane Divided Roadway Where One Lane is Closed." The page shows a sequence of three different warning signs, one informing the driver approaching the work area, "Road Work 1 Mile"; 2,600 feet from the first sign, a second sign stating which lane is closed; and 1,600 feet from the second sign, a last sign showing a diagram that indicates how traffic is to flow around the work area. One thousand feet from the third warning sign is a series of cones placed on the highway to direct traffic around the work area. At the work area is a truck or trailer with flashing lights as a warning. Page 6-61 is the mobile operations section of the Work Zone Traffic Control Standards and Guidelines found in the MUTCD, which states:

"Mobile operations are work activities that make frequent short stops, up to a 15-minute period, such as litter cleanup or pothole patching and are similar to stationary operations. Warning signs, flashing vehicle lights, flags, and/or channelizing devices should be used.

"Safety should not be compromised by using fewer devices simply because the operation will change its location frequently. Portable devices should be used. Flaggers may be used but caution must be taken so they are not exposed to unnecessary hazards. The control devices should be moved periodically to keep them near the work area. If mobile operations are in effect on a high speed travel lane, flashing arrow panels should be used."

The two exhibits were used by the defendants to cross-examine Loveland during the second trial. Loveland read page 6-61 of the manual to the jury.

Carter notes that, although the plaintiff was precluded from making a claim against the City of Wichita because her exclusive remedy against the City was limited by the Workers Compensation Act, under K.S.A. 1990 Supp. 60-258a defendants are entitled to assert the comparative fault of the City of Wichita even though the City could not be formally joined as a party to the lawsuit. See *Toumberlin v. Haas,* 236 Kan. 138, 689 P.2d 808 (1984). The defendants contended throughout both trials that it

was the city street maintenance department's failure to provide a proper working area for its worker that caused the accident. Defendants argue that the jurors, having been informed of the applicable provisions of the Work Zone Traffic Control Standards and Guidelines section and using their common knowledge and experience as drivers in a relatively urban county, could properly conclude that the city street maintenance department was negligent. Defendants assert there was no need or requirement for expert testimony regarding the City of Wichita's failure to comply with the MUTCD.

Testimony in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of fact. K.S.A. 60-456(d). Expert opinion testimony is admissible if it will be of special help to the jury on technical subjects as to which the jury is not familiar or if such testimony would assist the jury in arriving at a reasonable factual conclusion from the evidence. *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 445, 647 P.2d 320 (1982); *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 21, 578 P.2d 1095 (1978).

In *Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400 (1982), the plaintiff was injured in an automobile accident. Plaintiff alleged both the state and the county had failed to erect a warning sign in accordance with the MUTCD. We noted that the MUTCD is to be used as a guide for state and local highway engineers in exercising their professional judgment as to any particular highway problem. We noted that the manual is not a substitute for engineering judgment. The provisions of the manual are intended to be standards for traffic control devices installation but not legal requirements for installation. 231 Kan. at 788-89.

In *Toumberlin v. Haas*, 236 Kan. 139, the plaintiff alleged that the county had failed to place proper warning signs at an intersection. We noted that the plaintiff had presented no engineering testimony that the placement of any type of sign at the intersection was warranted or required under the terms of the MUTCD.

It is a well-established rule in Kansas that the admissibility of expert testimony is within the broad discretion of the trial court. A party claiming an abuse of trial court discretion bears the

burden of showing abuse of discretion. *Elrod v. Walls, Inc.*, 205 Kan. 808, 814, 473 P.2d 12 (1970); *Stafford v. Karmann*, 2 Kan. App. 2d 248, 250, 577 P.2d 836 (1978). The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision. *Hoffman v. Haug*, 242 Kan. at 873.

In *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (1978), we noted that expert testimony is ordinarily required in medical malpractice cases to establish a standard of care and to prove causation. An exception to this rule is recognized, however, where the lack of reasonable care or the existence of proximate cause is apparent based on common knowledge or experience. The basis for the admission of expert testimony is necessity arising out of the particular circumstances of the case. Where the normal experience and qualifications of jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are not necessary.

There is nothing complicated or complex regarding the MUTCD's statement and explanation of how to sign a maintenance area and protect workers that requires expert testimony to assist the jury in arriving at a reasonable factual conclusion from the evidence. The MUTCD establishes a standard of care, and whether meeting this standard was essential under the facts of this case could be determined based on the common knowledge and the experience of the jury.

Under the facts of this case, whether the warning signs or devices were sufficient to warn an ordinarily observant driver of a construction or maintenance operation being carried out in the curb lane of K-42 falls within the common knowledge and experience of motorists. No expert testimony concerning the standards of the MUTCD was required. Under the standards for granting a motion for directed verdict, there was sufficient evidence to require the trier of fact to determine if the City breached its duty of care. The trial court's decision that the expert testimony was required and its grant of a directed verdict on the negligence of the City of Wichita was error.

Sterba contends the trial court erred at the second trial in failing to submit an admitted exhibit, a diagram of the accident

scene prepared by the investigating police officer, to the jury during its deliberations. The diagram included measurements, location of the point of impact, and other relevant information relating to the traffic accident. The exhibit was inadvertently removed from the pile of exhibits given to the jury. During deliberations, the jury requested the diagram on at least two occasions. The judge refused the jury's request for the exhibit, apparently believing the jury was asking for an exhibit which had not been admitted into evidence. The judge explained his confusion at the hearing on the motion for directed verdict and concluded:

"[T]here really is no question but that the jury was entitled to see that exhibit, wanted it, and it's a—if there's a motion filed for a new trial on that basis, which I think plaintiff's counsel indicated he would do, the Court would sustain the motion for that reason."

The rule where an exhibit is admitted but the jury fails to receive the exhibit during its deliberations is the same as where admissible evidence is excluded. Where admissible evidence is excluded, it is essential to the granting of a new trial that the matter shall have been presented to the court in the proper way and that harm or prejudice shall have resulted from the exclusion. If the point on which the rejected evidence was offered was conceded by the other party, was clearly established by other evidence, or could have been proved thereby, or if some other point was decisive of the case, a new trial should not be granted. 66 C.J.S., New Trial § 40.

Although the plaintiff has not specifically shown how she has been prejudiced by the trial court's mistake, this issue has merit because of other trial error.

Sterba also contends the trial court erred in limiting the new trial to the issue of liability only. Sterba argues she was prejudiced by that limitation. She argues that *Timmerman v. Schroeder*, 203 Kan. 397, 454 P.2d 522 (1969), which dealt with whether a new trial should have been limited to the issue of damages, suggests the necessity of a new trial in this case on the issues of both liability and damages.

K.S.A. 60-259 provides that a new trial may be granted to all or any of the parties and on all or part of the issues when it appears that the rights of the parties are substantially affected for

any of the six reasons listed. In *Eckdall v. Negley*, 5 Kan. App. 2d 724, 624 P.2d 473 (1981), a personal injury negligence action arose out of a motorcycle-automobile collision. After finding one of the jury instructions given by the trial court was outdated, erroneous, and reversible error, the Court of Appeals stated:

"Since we find no error as to damages, that portion of the judgment is affirmed. [Citations omitted.] The question of apportionment of fault is reversed, and the case is remanded to the trial court for a new trial limited to the question of apportionment of fault. The trial court shall then apply the percentage of fault found by the trier of fact to the amount of damages affirmed in this case and enter judgment accordingly." 5 Kan. App. 2d at 728.

Because of what occurred in the first and the second trial, all parties are entitled to a new trial on all issues.

We express no opinion as to the merits of the case, nor as to the actions of the parties to the litigation, but because of the number of trial errors it is necessary that we reverse and remand for a new trial in accordance with this decision.