(955 P.2d 141)
No. 76,979

W. J. FITZPATRICK, Conservator for JESSICA BATY, a minor, *Appellant*, v. SAMANTHA S. ALLEN, *Appellee*, and MEL-O-DY ICE CREAM, INC., and TINA BATY, *Defendants*.

 Opinion filed February 27, 1998. 

*W. J. Fitzpatrick*, of Independence, for appellant.

*Douglas G. Ott*, of Hall, Levy, DeVore, Bell, Ott & Kritz, of Coffeyville, for appellee.

Before KNUDSON, P.J., PIERRON and MARQUARDT, JJ.

KNUDSON, J.: William J. Fitzpatrick, as conservator for Jessica Baty, a minor, appeals from a jury verdict and judgment entered in favor of Samantha S. Allen, in a personal injury action.

We affirm.

Jessica Baty is the minor child of Tina and Brent Baty. Jessica was struck by a van driven by Samantha S. Allen. At the time, Jessica and her parents were purchasing ice cream from a Mel-O-Dy Ice Cream van parked across the street from their home. As a result of the accident, Jessica sustained a broken wrist, lacerations, and a hairline fracture to her skull.

A summary of the trial testimony will be helpful in understanding the issues raised on appeal and our resolution of those issues.

The jury trial began on March 20, 1996. The testimony of the witnesses will be summarized as follows. On May 14, 1994, the Baty family lived on South 17th Street in Independence, Kansas. This is a busy street running north and south. The day was warm and clear. In the afternoon, an ice cream van playing music entered the Batys' neighborhood travelling south on 17th Street. Brent and Tina took their children—Jessica (age 4), Briar (age 2), and Charlie (age 1)—outside to get ice cream.

The ice cream van had stopped on the west side of the street, which does not have a curb, across from the Baty home. The van pulled to the side of the road and was parked halfway on the street and halfway on the grass. The parents held the children's hands as they crossed 17th Street toward the van. Tina stated there were several people already at the van as they approached. The ice cream van was operated by David Hammack and his wife, Patricia. The Hammacks testified that the Batys were the only customers. The Batys went to the west (passenger) side of the van to order ice cream.

The ice cream vehicle was a regular white van with blue stripes on each side. The passenger side had pictures of the different kinds of ice cream available. The driver's side of the van had a Mel-O-Dy ice cream sign with letters 3 or 4 inches tall. There were no caution or warning signs on the back of the ice cream van to warn oncoming drivers. There is a dispute whether the van's emergency flashers were operating when the van stopped.

The Hammacks had been working for Mel-O-Dy Ice Cream company for 2 or 3 weeks. The van had musical equipment with a speaker on the top of the cab to attract children.

Hammack testified that his training by Mel-O-Dy was limited to getting instructions and riding around with another driver for about 3 hours. Hammack did not get any instructions on safety, and he did not review any videotape about safety. Dianna Fender, president of Mel-O-Dy, testified that Mel-O-Dy had a training tape which it sometimes showed to its drivers; in other cases, it verbally goes over the matters covered in the tape with the drivers. She testified that Mel-O-Dy preferred that all drivers watch the tape, but each branch office might do things differently.

Testimony about the actual accident differed. Tina testified that after getting the ice cream, she was walking back toward their home, with Jessica holding onto her wrist. As they were walking toward the front of the ice cream van, Patricia Hammack called Tina back to get more ice cream. Tina turned back toward the van's passenger door, and Jessica released her wrist. After receiving the additional ice cream, Tina reached for Jessica's hand but Jessica was no longer there. When Tina turned, she saw Jessica standing still in front of the ice cream van between the headlights; Tina could not specify how far in front of the van Jessica was standing. Tina testified that Jessica turned to look at her mother when another vehicle (Allen's van) came around the ice cream van and struck Jessica. Tina had not seen the Allen vehicle coming down the street prior to the accident.

Patricia Hammack testified that Tina and Brent Baty were arguing over what ice cream to order when Jessica wandered to the front of the van. Patricia testified that Tina called to Jessica several times while she was standing in front of the van, but that Jessica

did not return to her mother. Neither Patricia nor David Hammack saw the impact between the Allen vehicle and Jessica. The last time before the accident that David saw Jessica, she was standing about 5 to 6 feet in front of his van nearly in line with the driver's side headlight. Her mother was not with her.

Although she did not see the impact, Patricia Hammack testified that the Allen vehicle cut back in front of the ice cream van immediately after passing and struck Jessica. Patricia Harness, the daughter of the Batys' neighbor, also testified that Jessica was standing still in front of the ice cream van when the Allen vehicle swerved back into the southbound lane in front of the stopped van; at this point, the Allen vehicle struck Jessica.

Samantha Allen was 16 years old at the time of the accident. She had taken her sister to softball practice and was returning home when the accident occurred. Allen was traveling 25 to 30 mph when she saw a white van parked on the side of the road. She slowed down and moved left to go around the van. The van had no markings, and she did not see any people around the van. Just as she passed the front of the parked van, she felt a thump. She slammed on her brakes and looked in the mirror. When she saw people around, she pulled over to the side of the road. After the accident, Allen saw a little handprint toward the front end of the passenger door.

Denny Kruse was driving several car lengths behind the Allen vehicle at the time of the accident. Kruse saw a couple of adults and several children by the parked van as the Allen vehicle moved left to go around the van. He saw no markings or caution signs on the back of the parked van, and there were no flashing lights. Kruse saw Allen's brake lights go on as Allen went around the van. As Allen was passing, there was 6 to 8 feet between the Allen vehicle and the parked van. Kruse estimated Allen was going between 20 and 30 mph as she passed the van. Kruse saw a child run out from the front of the parked van. Jessica was struck by Allen's vehicle. The impact left her in the middle of the road.

Tina testified that the van struck Jessica under the chin and she fell backwards. When Tina reached Jessica, she had a bleeding gash on her chin. Tina picked Jessica up off the street and carried her

to the Batys' front yard. David Hammack testified that he saw Jessica lying in the middle of the street after the impact.

After checking on Jessica, Kruse went over to check on Allen, the driver of the van, and to comfort her. Kruse stated he was sorry Allen was in the position of having struck the child and saw that Allen was crying. Kruse testified he told Allen that he did not think it was her fault.

Officer Winterringer of the Independence Police Department arrived on the scene after the accident was reported. He was not the first officer on the scene. He admitted that he did not witness the accident, but he prepared an incident report based upon information witnesses gave to him. The officer did not interview the parents or anyone other than Samantha Allen and Denny Kruse. No one else approached him as a witness to the accident. The ice cream van had left by the time Winterringer arrived. Winterringer saw no skid marks on the street and could not determine where the point of impact was in this accident.

Jessica received treatment at a local hospital and then was transported to Wesley Medical Center in Wichita. Jessica's medical expenses totaled $7,109.04. The parties stipulated that Jessica had fully recovered from her injuries at the time of trial.

The jury was directed to consider the fault of Jessica, Samantha Allen, Tina Baty, Mel-O-Dy, David Hammack, and Patricia Hammack. The jury found Mel-O-Dy to be 20% at fault and Tina Baty 80% at fault and determined Jessica's total damages to be $7,109.04, the amount of her medical expenses.

The issues on appeal concern evidentiary rulings, the fault of Tina Baty, jury instructions, and juror misconduct.

In his first issue on appeal, plaintiff W. J. Fitzpatrick, conservator for Jessica Baty, alleges that the trial court erred in refusing to grant a new trial based upon Denny Kruse's statement during direct examination that the accident was not Samantha Allen's fault. The exact testimony is as follows:

"Q. [by defendant's attorney] Go ahead and just—just answer the question as to why you went down to see the little girl [referring to Samantha.]
"A. Well, I wanted to comfort her basically. I mean, I felt very sorry that she happened to be in that position at that time and I—she was crying and I just said I don't think it was your fault."

Plaintiff immediately objected and asked for a mistrial. When the court denied his motion, counsel asked that Kruse's statement be stricken and the jury admonished to disregard the statement. The trial court promptly struck the objectionable portion of Kruse's testimony and instructed the jury to disregard the statement.

A decision to grant or deny a new trial rests in the sound discretion of the trial court. That decision will not be reversed on appeal unless a clear abuse of discretion is shown. See *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 15, 899 P.2d 1013 (1995). The abuse of discretion standard also applies when ruling on motions for a mistrial. See *State v. Rinck*, 256 Kan. 848, 853, 888 P.2d 845 (1995).

Kruse's testimony regarding Allen's fault was unsolicited and unresponsive to defense counsel's question. " 'Where an unsolicited, unresponsive, and improper remark is given by a witness to a proper question resulting in the erroneous disclosure of evidence, the case turns on whether a limiting instruction was given and the degree of prejudice to the [affected party].' " *State v. Rice*, 261 Kan. 567, 593, 932 P.2d 981 (1997) (quoting *State v. Barncord*, 240 Kan. 35, Syl. ¶ 5, 726 P.2d 1322 [1986]). "On appeal, we have held that a jury will be presumed to have disregarded evidence about which an objection was sustained." 261 Kan. at 592-93.

Considered within context, Kruse's remark to Allen was intended to console and reassure her after the tragic accident. It is highly questionable that a juror would have understood his statement to be an opinion of Allen's legal fault. In any event, the trial court's measured response was appropriate and effectively negated any prejudice that plaintiff might have otherwise suffered as a result of the statement. There was substantial competent evidence presented to the jury to support its finding that Samantha Allen was not at fault. There has been no showing by plaintiff that the jury ignored the court's admonition. We conclude the trial court did not err in its rulings upon this issue.

Plaintiff next contends the trial court erred in admitting into evidence an accident report prepared by Officer Winterringer and a written statement given by the witness Kruse. An abuse of dis-

cretion standard applies to our review. See *Smith v. Printup*, 262 Kan. 587, 592, 938 P.2d 1261 (1997).

The report was offered into evidence by Allen during her cross-examination of plaintiff's first witness, Independence Police Chief Lee Bynum. At the beginning of cross-examination, Allen had the report marked as an exhibit. Plaintiff objected, stating that any questions about the accident report were beyond the scope of direct examination. Later in discussion with the trial court, plaintiff stated: "I have objected to that. I've already stated this report to these attached—and I think that it's also—Judge, this is well beyond the scope of cross-examination of this witness." The trial court overruled the objection at this point, and Allen established the foundation of the document through the testimony of the witness. When Allen offered the report, including the attached statement given by Kruse, into evidence, plaintiff objected, saying, "I think I've already stated my position."

We digress to note that later in the trial during Allen's direct examination of Denny Kruse, Kruse admitted that he gave a written statement to the police and confirmed that his statement was attached to the police report that had been admitted into evidence. At this point, plaintiff objected to the admission of the handwritten statement—already admitted—because it was not the best evidence and unnecessary in light of Kruse's testimony. This objection was overruled.

For the first time on appeal, plaintiff argues that the police report was inadmissible because it contained impermissible opinions by Kruse and the investigating police officer. Plaintiff also argues that the report should not have been admitted because it reflects that Allen was not cited for any traffic violations.

We are aware that before trial, plaintiff's motions in limine were denied regarding the admission of the accident report and the written statement given by Kruse. However, it is well settled that

"[i]f a motion in limine is denied, the moving party must object to the evidence at trial to preserve the issue on appeal. . . . The failure to request a ruling on the motion at trial or otherwise object to the evidence at trial results in the issue not being preserved on appeal." *State v. Johnson*, 255 Kan. 252, Syl. ¶ 1, 874 P.2d 623 (1994).

While plaintiff did object to the report during Chief Bynum's testimony, the only articulated and specific objection was that the evidence was beyond the scope of direct examination.

At no time did plaintiff object on the basis he now asserts on appeal. "A party may not object to the introduction of evidence on one ground at trial and then assert a different objection on appeal." *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, 1055, 940 P.2d 84 (1997). Because plaintiff did not raise any specific substantive objection to the police officer's portion of the report and because his objections to Kruse's written statement made at trial differ from those raised on appeal, plaintiff has failed to preserve this issue for appellate review.

We next consider the admission into evidence of a videotape prepared by an ice cream association and an order form. The video was a safety training video that Mel-O-Dy used with some of its drivers. The order form was for safety products sold by the ice cream association, including signs to place on ice cream vehicles.

The trial court found the video and order form to be relevant to Allen's claim that Mel-O-Dy and its employees did not exercise reasonable care and that their lack of care caused or contributed to this accident. The relevance of evidence are matters left to the sound discretion of the trial court and will be reviewed under the abuse of discretion standard. Whether certain evidence is relevant is "more a matter of logic and experience than it is a matter of law." *Noel v. Pizza Management, Inc.*, 258 Kan. at 9.

Plaintiff contends that admission of the video improperly allowed the jury to determine its own concept of duty beyond that provided in the jury instructions. However, that is not why the evidence was offered or admitted. Allen claimed that Mel-O-Dy was negligent in failing to train David Hammack in a manner that protected the children that the ice cream van was designed to attract. The president of Mel-O-Dy testified that some of its drivers were shown the tape and some were told of the types of safety concerns expressed in this tape. This evidence was admissible because it goes directly to Allen's claims of negligence by Mel-O-Dy and the Hammacks. There has been no showing of an abuse of

discretion in admitting the questioned evidence. See *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 804, 897 P.2d 123 (1995).

Plaintiff next contends the trial court erred in denying his motion for a directed verdict regarding the fault of Tina Baty. At the conclusion of Allen's case, plaintiff moved for a directed verdict as to Allen's claims that persons other than Allen were negligent. Plaintiff argued that there was insufficient evidence that any of these other persons, including Tina Baty, were at fault in this accident. In regard to the negligence of Tina Baty, plaintiff acknowledged that upon the evidence "[p]erhaps an argument could be made that [Jessica] should have been behind the ice cream van and not in front but there is no duty of law that says that."

When appellate review is sought on a motion for directed verdict, the court is required to " 'resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could' differ on the conclusions to be drawn from the evidence adduced, the motions should be denied." *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 280-81, 875 P.2d 949 (1994). The presence or absence of negligence is generally left to the trier of fact. *Lanning v. Anderson*, 22 Kan. App. 2d 474, 478, 921 P.2d 813, *rev. denied* 260 Kan. 994 (1996). When the court's ruling on a directed verdict, however, is based upon a conclusion of law, that ruling may be reviewed de novo. 22 Kan. App. 2d at 483.

Plaintiff's argument is that under the doctrine of parental immunity, a parent owes no legal duty of care to the child. See *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980), for an extensive discussion of the doctrine's history and development. We do not agree.

The concept of immunity does not mean there is no duty; only that there is a prohibition against the recovery of damages if a duty is breached. In *Bonin v. Vannaman*, 261 Kan. 199, 237, 929 P.2d 754 (1996), the court noted that one criticism of recognizing any parental immunity was that it was "offensive that once a parent falls into an immunity exception, then the parent may act negligently without fear of liability."

The Kansas appellate courts have repeatedly held that even if some form of immunity shields a nonparty from liability, the jury may under K.S.A. 60-258a still consider the immune person's fault.

For example, in *Sterba v. Jay*, 249 Kan. 270, 816 P.2d 379 (1991), the plaintiff brought a wrongful death action arising from the death of her son. The son was killed in a pedestrian-automobile accident while working as a street maintenance worker. The automobile driver attempted to compare his fault with that of the son's employer for failing to place proper signs warning drivers that maintenance work was being performed at the accident scene. The court held that even though the plaintiff could not sue the employer for negligence because of the exclusive remedy provisions of the Workers Compensation Act, the defendant was entitled to assert the employer's fault under the comparative fault statute. 249 Kan. at 281-82. See also *Miles v. West*, 224 Kan. 284, 286, 580 P.2d 876 (1978) (husband's fault in automobile accident could be compared under K.S.A. 60-258a, even if he is entitled to interspousal immunity and damages cannot be collected from him).

The purpose of allowing juries to consider the fault of immune nonparties was discussed in detail in *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978). In *Brown*, the Supreme Court stated:

"The perceived purpose in adopting K.S.A. 60-258a is fairly clear. The legislature intended to equate recovery and duty to pay to degree of fault. . . . There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss." 224 Kan. at 203.

We also note plaintiff further objects to the failure of the trial court to grant a directed verdict because no instructions were given to the jury defining the duties Tina Baty owed to her daughter, other than the general instruction defining negligence that follows PIK Civ. 2d 20.01A (1996 Supp.). This argument lacks legal merit; what are proper instructions as to an alleged tortfeasor's duties is

not relevant as to whether a directed verdict should be granted. Parenthetically, we also note that the plaintiff did not raise at the instruction conference before the trial court and does not now raise on appeal an issue as to whether the trial court properly instructed the jury as to Tina Baty's duty.

We conclude the trial court did not err in denying plaintiff's motion for directed verdict.

Plaintiff next contends the trial court committed reversible error when it failed to give the jury the Kansas pattern instruction PIK Civ. 2d 8.12(c). We note plaintiff did not request this instruction; rather, plaintiff asked for PIK Civ. 2d 8.12(a), which was not given by the trial court. A party cannot claim error for the court's failure to give an instruction which was not requested by that party unless the failure was clearly erroneous. See *Bright v. Cargill, Inc.*, 251 Kan. 387, 409, 837 P.2d 348 (1992).

In any event, after reading the jury instructions as a whole, it does not appear that the trial court's failure to give PIK Civ. 2d 8.12(a) and/or (c) was clear error or unduly prejudicial. Instruction number 12 listed plaintiff's contentions. This instruction specified that plaintiff was alleging that Allen was "traveling at an unreasonable speed considering the circumstances." Instruction number 16, tailored after PIK Civ. 2d 20.01A (1996 Supp.), described the concept of comparative fault and included a standard definition of negligence.

In *Guillan v. Watts*, 249 Kan. 606, 617, 822 P.2d 582 (1991), the trial court refused plaintiff's request for an instruction similar to PIK Civ. 2d 8.12(b), even though there was evidence that the defendant was exceeding the posted speed limit. The jury returned a verdict finding both plaintiff and defendant 50% at fault. The court found that refusing to give the instruction was reversible error. The court stated:

"The instructions given did not adequately cover this theory. Here, the instructions read as a whole do not fairly instruct the jury on the law governing the case. In addition, because this is a close case, the potential prejudice to Guillan is increased. In this case, the jury split fault evenly at 50 percent. An instruction that any speed in excess of 35 mph was unlawful would strengthen Guillan's case and increase the likelihood of a verdict in Guillan's favor." 249 Kan. at 618.

The facts in this case differ substantially. First, plaintiff specifically requested only an instruction under PIK Civ. 2d 8.12(a), requiring a driver not to exceed a speed that is "reasonable under the conditions and hazards then existing." This instruction would not give the jury a distinctive standard different than that of the "reasonable care" standard that was given. Moreover, the jury was aware of the nature of plaintiff's claims of fault against Allen, including his claim that Allen should have slowed down even more than she did when passing the Mel-O-Dy van. It does not seem that the jury would likely have been misled by the instructions actually given by the trial court.

In his final issue on appeal, plaintiff alleges that the trial court abused its discretion in refusing to grant a new trial because of juror misconduct. The misconduct of which plaintiff complains was the jury decision awarding damages for Jessica's medical expenses only. As noted above, our standard of review is abuse of discretion. See *Noel v. Pizza Management, Inc.*, 258 Kan. at 15.

Plaintiff contends that because the jury failed to award damages for pain and suffering, at least a suspicion of compromise exists. In other words, the jury presumably compromised on the issue of liability as well as damages. Plaintiff relies on *Timmerman v. Schroeder*, 203 Kan. 397, 398, 454 P.2d 522 (1969). In *Timmerman*, the jury returned a verdict for plaintiff in an automobile accident case, but awarded plaintiff the exact amount of her medical expenses and nothing else. Plaintiff appealed. The Supreme Court held that when there is uncontradicted evidence of pain and suffering, a jury verdict for medical expenses only is contrary to the evidence and should be set aside. 203 Kan. at 399.

In *Timmerman*, the Supreme Court also discussed whether a new trial should be ordered for damages only, or for liability and damages. The Supreme Court held that "[a] new trial on the issue of damages only should not be granted when there appears a strong suspicion that inadequate damages were awarded as a compromise on the issues of liability and damages. Such a compromise infects the entire verdict of the jury and renders it totally invalid." 203 Kan. at 401. "[T]here must be a genuine conflict in the evidence on the issue of liability" in order for any strong suspicion of com-

promise to exist. 203 Kan. at 401. *Cf. Miller v. Zep Mfg. Co.*, 249 Kan. 34, 35, 815 P.2d 506 (1991) (jury found plaintiff 49% at fault and defendants 51% at fault but awarded limited damages).

Plaintiff argues that a suspicion of compromise exists in this case. This argument is weak. One might expect a compromise if the defendant was found at fault, but the jury awarded only limited damages. It is incongruous to suspect that the jury compromised on liability and damages when it awards limited damages and finds defendant Allen zero percent at fault. See *Lutz v. Peine*, 209 Kan. 559, 564, 498 P.2d 60 (1972) (no suspicion of compromise verdict can be made because of inadequate damages when the jury found plaintiff guilty of contributory negligence).

In this case, the actions of the jury in failing to award damages for pain and suffering to plaintiff was contrary to uncontroverted evidence in the record. However, jury misconduct will not constitute a ground for reversal unless it is shown to have substantially prejudiced the rights of a party. See *Cleveland v. Wong*, 237 Kan. 410, Syl. ¶ 5, 701 P.2d 1301 (1985). The burden of showing prejudice lies with the appellant. *State v. Griffin*, 262 Kan. 698, 702, 941 P.2d 941 (1997).

The jury found the named defendant Allen to be zero percent at fault. Therefore, the legal adequacy of the jury's finding of damages has not been shown to have any relationship to the jury's determination of legal liability. We conclude the jury's failure to award damages for pain and suffering did not prejudice the substantial rights of plaintiff and a new trial is not warranted.

Affirmed.