(16 P.3d 986)
No. 84,205

VICTOR DiPIETRO, *Appellant,* v. CESSNA AIRCRAFT COMPANY, *Appellee.*

Opinion filed December 22, 2000.

*John W. Johnson* and *Shari R. L. Willis,* of Bradshaw, Johnson & Hund, of Wichita, for appellant.

*John C. Nettels, Jr.,* and *Thomas E. Nanney,* of Morrison & Hecker L.L.P., of Kansas City, Missouri, for appellee.

Before BEIER, P.J., GERNON, J., and JANICE D. RUSSELL, District Judge, assigned.

RUSSELL, J.: In September 1997, Victor DiPietro traveled from his home in Washington to Wichita, Kansas to pick up a business jet he had purchased from Cessna Aircraft Company (Cessna). While at the Cessna Service Center, he met with a flight instructor to obtain a special certificate so he could fly his new plane back to Seattle. DiPietro and the flight instructor were conducting a pre-flight inspection of the aircraft when DiPietro tripped over a curb

and fell backwards into a concrete drainage ditch, fracturing his lower right arm and wrist.

The aircraft was parked on a ramp area adjacent to the drainage ditch at the time that DiPietro fell. He sued Cessna, claiming Cessna was negligent for failing to provide adequate protective measures, such as a barrier, which would prevent customers from falling into the drainage ditch. He further alleged the drainage ditch posed a dangerous condition of which Cessna failed to provide adequate warning. Cessna defended by contending the ditch was an open and obvious hazard, of which DiPietro was fully aware.

After DiPietro's fall, Cessna erected a fence surrounding the area of the drainage ditch to prevent anyone else from falling into it.

The trial court ruled at the pretrial stage and again during trial that the subsequent erection of the fence was inadmissible pursuant to K.S.A. 60-451. The case was submitted to a jury, and the jury returned a defendant's verdict, finding Cessna 20 percent at fault and DiPietro 80 percent at fault. DiPietro challenges the propriety of the trial court's rulings on the inadmissibility of Cessna's subsequent remedial conduct in this appeal.

The admissibility of subsequent remedial conduct is governed by K.S.A. 60-451:

"When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event."

DiPietro argues that the trial court's rulings on the admissibility of this particular evidence should be reviewed de novo by this court. In support of his argument, he cites *Glassman v. Costello*, 267 Kan. 509, 517, 986 P.2d 1050 (1999), for its holding that statutory interpretation is a question of law, and an appellate court's review of questions of law is unlimited.

DiPietro misapprehends the scope of the holding of *Glassman*. *Glassman* does not deal with the admissibility of evidence. Rather, it concerns the qualifications of an expert witness under K.S.A. 60-3412, which is a purely statutory enactment. While it is true that

the common-law rules of evidence have been adopted by the legislature in Article 4 of Chapter 60 of the Kansas Statutes Annotated, the statutory enactment did not convert questions of admissibility of evidence to questions of law subject to a de novo review.

"The standard of review applied to questions involving the admissibility of evidence at trial is one of abuse of discretion. [Citation omitted.] Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." *Smith v. Printup*, 262 Kan. 587, 592, 938 P.2d 1261 (1997).

DiPietro filed a pretrial motion seeking to introduce evidence of the fence to rebut Cessna's allegation of his comparative fault. The trial court made a preliminary ruling that subsequent remedial conduct was inadmissible and directed plaintiff's counsel to make a motion outside the jury's presence regarding the evidence if he believed developments at trial made the evidence admissible for other purposes.

DiPietro attempted to bring in the evidence of the fence under two different theories during trial. First, he argued Cessna's cross-examination of him opened the door to rebut evidence of his comparative fault. Second, during DiPietro's direct examination of a Cessna employee, testimony was introduced as to how high a fence might be erected without hindering aircraft operations. DiPietro argued this testimony placed feasibility at issue, and that feasibility creates an exception to the statute barring evidence on subsequent remedial conduct.

When DiPietro argued during trial that evidence of the fence fell within the exceptions to K.S.A. 60-451, the trial court stated:

"To me it's subsequent remedial conduct which is prohibited by the statute, unless there's agreement among the parties. . . . [The s]tatute says not admissible. I believe the only way I would allow it is if the parties agree it is. Is there an agreement?"

The essence of the trial court's holding seems to be that evidence of subsequent remedial conduct is never admissible, except by agreement of the parties. The trial court spoke too broadly, as there are indeed exceptions to the general rule that prohibits the admis-

sibility of evidence of subsequent remedial conduct. Those exceptions that are pertinent to this case are discussed below.

Even though the trial court misstated the criteria for admissibility of the evidence, we find it was harmless error. Evidence properly ruled inadmissible at trial is not grounds for reversal, even if the trial court relied upon incorrect reasoning in making its ruling, and evidence wrongfully excluded will not be overturned unless it affirmatively appears from the record the error prejudicially affected the substantial rights of the parties. *Smith v. Massey-Ferguson, Inc.*, 256 Kan. 90, 122, 883 P.2d 1120 (1994).

We first examine DiPietro's contention that the evidence should have been admitted to prove the feasibility of erecting a barrier or fence. He correctly argues that K.S.A. 60-451 excludes evidence of subsequent remedial or precautionary measures taken by the defendant after an accident for the purpose of proving the defendant's negligence but permits the admission of such evidence when relevant to prove other matters at issue in the case. In support of this position, he cites several Kansas cases: *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982) (control); *Siruta v. Hesston Corp.*, 232 Kan. 654, 666-68, 659 P.2d 799 (1983) (feasibility of alternate design in products liability case); and *Huxol v. Nickell*, 205 Kan. 718, 722-24, 473 P.2d 90 (1970) (responsibility for erecting barricade).

He primarily relies upon *Siruta*, arguing that Cessna placed at issue the feasibility of erecting a fence at that location. In that case, Justice Prager wrote: "We hold that where evidence of remedial or precautionary measures is not offered to prove negligence or culpable conduct, it is admissible when offered for other relevant purposes such as the feasibility of a design change in a products liability case." 232 Kan. at 668.

*Siruta* was a products liability case. The case at hand is a premises liability case. DiPietro admits that Kansas has never extended the feasibility concept to a premises liability case, but cites a line of cases from other jurisdictions which do so: *Lundquist v. Nickels*, 238 Ill. App. 3d 410, 605 N.E.2d 1373 (1992); *Pyle v. Prairie Farms Dairy Inc.*, 777 S.W.2d 286 (Mo. App. 1989); *Cech v. Montana*, 604 P.2d 97 (Mont. 1979); *Kurz v. Dinklage Feed Yard, Inc.*, 205

Neb. 125, 286 N.W.2d 257 (1979); and *Jones v. Robert E. Bayley Constr. Co., Inc.*, 36 Wash. App. 357, 674 P.2d 679 (1984).

We note that feasibility is a concept that developed out of products liability cases. We decline to decide whether it should be extended to premises liability cases, as DiPietro urges, because we find that the evidence upon which plaintiff relies to argue that feasibility had been put in issue simply does not meet the *Siruta* prerequisites for admissibility. The *Siruta* opinion meticulously analyzes the circumstances in which subsequent remedial conduct should be admitted to show feasibility of a design change.

In *Siruta*, defendant's motion in limine was granted, precluding plaintiff from submitting evidence of subsequent design changes in his case in chief. It was not until after defendant presented testimony of its own expert that a design change proposed by plaintiff was not feasible that the court allowed the plaintiff to cross-examine defendant's witnesses about subsequent design changes. The Supreme Court approved this method of determining when subsequent remedial conduct should be admitted, holding:

"In other words, in the field of products liability the rule excluding evidence of subsequent modifications has not been applied where such evidence is offered to show the technological or economic feasibility of alternative designs which would have prevented the injury. That is exactly the situation which we have in the case presently before us. *The trial court refused to allow the plaintiff to admit evidence of subsequent design changes until the testimony of defendant manufacturer's expert had raised the issue as to the technological or economic feasibility of the design change suggested by plaintiff's expert.*" (Emphasis added.) 232 Kan. at 667-68.

When we examine the context of plaintiff's attempt to offer evidence of the subsequent erection of the fence, we find marked differences. First, the defendant did not present expert testimony that erection of a fence or barricade was not feasible. The only testimony that could possibly be construed as testimony that a fence was not feasible came from a Cessna employee called by the plaintiff in his case in chief. The employee testified that the proximity of the drainage ditch to a ramp on which aircraft were taxied around meant that a fence of more than a "couple feet" would hinder aircraft operations because the wing tips of certain planes might collide with the fence during landing or parking. He never

asserted that installation of a fence or any other protective barrier was not feasible.

Plaintiff argues that the fence that was actually installed was 31 inches in height, 7 inches more than 2 feet. Even if the testimony had not come in during plaintiff's case in chief, we do not find that the minor discrepancy between the employee's testimony that a fence a "couple feet" in height was feasible and the height of the fence actually erected to be significant enough to trigger the need for the admission of evidence of subsequent remedial action.

The trial court properly excluded the evidence of subsequent remedial measures because the record shows the defendant never placed feasibility in dispute.

DiPietro next argues that evidence of Cessna's subsequent remedial conduct should have been admitted to rebut Cessna's assertions of his comparative fault for his injuries. Cessna affirmatively argued at trial the ditch was open and obvious and DiPietro could have avoided the accident had he exercised due care. DiPietro argues that evidence of the fence is highly probative to negate Cessna's claim and impeach the evidence brought forth at trial, such as pictures of the scene prior to the installation of the fence and witnesses supporting the theory that DiPietro knew or should have known of the danger.

Appellate courts in Kansas have not previously addressed this issue.

K.S.A. 60-451 prohibits evidence of subsequent remedial conduct by the defendant only as used to prove negligence or culpable conduct. *Huxol*, 205 Kan. 718, Syl. ¶ 2. DiPietro maintains his purpose in introducing Cessna's subsequent remedial conduct was to demonstrate that he was not negligent in failing to see the ditch prior to the installation of the fence. He contends that evidence of the fence will clarify the dispute as to whether the ditch was an open and obvious danger, but will not show which party was negligent.

In premises liability cases, the duty of ordinary care is imposed upon business proprietors to maintain the premises used by their customers in a reasonably safe condition. *Jones v. Hansen*, 254 Kan. 499, 510, 867 P.2d 303 (1994). However, the duty is not absolute

and the degree of reasonable care exercised by a landowner has limits. See 254 Kan. at 510. A defendant's liability is reduced by the plaintiff's failure to exercise reasonable care in avoiding an open and obvious danger pursuant to K.S.A. 60-258a, the comparative fault statute. See *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43-44, 815 P.2d 506 (1991). Under the comparative fault statute, the trier of fact considers each party's negligence when assigning the percentage of fault. *Fitzpatrick v. Allen*, 24 Kan. App. 2d 896, 905, 955 P.2d 141, *rev. denied* 264 Kan. 821 (1998).

Evidence of the construction of the fence tends to prove that the landowner, Cessna, was more culpable than DiPietro, its customer. The process of determining comparative fault, when only two parties are involved, is a "zero sum game." When negligence is moved out of the plaintiff's column, it must move into the defendant's column. Evidence that tends to exculpate plaintiff in a comparative fault case places fault upon the defendant, and evidence of subsequent remedial conduct to prove negligence is prohibited by K.S.A. 60-451.

The policy reasons behind the prohibition against the admission of subsequent remedial conduct are strong and sound. Evidence of safety upgrades and post-accident precautions is very poor proof of negligence or defectiveness. Subsequent remedial measures do not constitute admissions of culpability, and evidence of such conduct is inherently unreliable. Exceptions to the rule should be allowed with great caution so the policy will remain intact. *In re Air Crash Disaster*, 86 F.3d 498, 529 (6th Cir. 1996). The policy behind barring evidence of subsequent remedial conduct is to encourage potential defendants to remedy hazardous conditions without fear that their actions will be used against them. *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994).

We find no reason to override the sound policy considerations behind K.S.A. 60-451 to create an exception to permit the introduction of evidence to rebut defendant's allegations of comparative fault on the part of a plaintiff. Evidence of subsequent remedial conduct to disprove a plaintiff's comparative fault is inadmissible.

The decision of the trial court is affirmed.